# Commonwealth *v.* Cilione, Appellant.

*Criminal law—Murder—Insanity—Previous committal of prisoner to insane asylum—Insanity at time of trial—Necessity for request for issue—Appeals.*

1. A person who, by reason of insanity, is unable to comprehend his position and to make a rational defense, cannot be tried on a criminal charge while in that condition.

2. If a trial judge is convinced, by evidence satisfactory to him of the prisoner's sanity when called for trial, there is nothing in

the law of Pennsylvania which makes it obligatory upon him to order a preliminary inquest.

3. A prior finding of insanity, where the cause of the malady is not continuing or permanent, is not enough in itself to require that the question of the prisoner's sanity at the time of a subsequent trial be submitted to the jury trying the case.

4. Where no request is made to the court to submit an issue as to the prisoner's sanity to the jury, and the trial judge certifies that the "appearance and actions" of the prisoner, and the other evidence in the case, fully satisfies his judicial conscience of the sanity of the defendant during the trial, the appellate court will not reverse because the jury was not permitted to pass on the question.

5. If, in such a case, counsel for defendant wishes to raise the issue as to the defendant's sanity at the time of the trial, he should petition the court for a preliminary inquiry, or ask to have the issue tried by the same jury which determines the merits.

6. Where a prisoner charged with murder· is adjudged insane by a special jury and committed to an insane asylum "so long as he should continue to be unsound in mind," and the court further directs that, when he is "restored to mental sanity," the superintendent is to report that fact to the court, and the superintendent so reports and it appears that the insanity was not continuing and permanent in its character,· the Commonwealth, at the subsequent trial of the prisoner, is not bound to prove affirmatively that the prisoner is sane, particularly where the prisoner does not raise such issue, and ask that it be submitted to the jury, and has not asked for a preliminary inquiry as to his sanity.

*Criminal law—Murder—Witness—Notes of testimony at previous trial—Evidence—Act of May 23, 1887, P. L. 158.*

7. On a murder trial the notes of testimony of two witnesses taken in a former trial are not admissible on proof merely that one of the witnesses was "sick, and that the subpœna server had been unable to obtain service upon the other."

8. Such proof is not sufficient under the Act of May 23, 1887, P. L. 158, to place the witnesses within the classes enumerated therein, in order to justify the introduction of the notes of their former testimony.

Argued April 16, 1928.    Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 172 and 173, Jan. T., 1928, by defendant, from judgment of O. & T. Phila. Co., March T., 1923, Nos. 376, 378, on verdicts of guilty of murder of the first and second degrees, in case of Commonwealth v. Francesco Cilione. Affirmed.

Indictment for murder. Before MAXEY, J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdicts of guilty of murder of the first and second degrees with sentences of imprisonment for life and for a term of years. Defendant appealed.

*Errors assigned* were various rulings on evidence and sentence, quoting record.

*Wm. A. Gray,** for appellant.—When a defendant to a murder charge has been adjudged insane and committed to the State Hospital for the Criminal Insane on the verdict of a jury in a previous inquest in the same case, it is error subsequently to try defendant unless the question of his sanity at the time of the trial is submitted to a jury either in a preliminary inquest or to the jury trying the indictment, with the instruction that defendant is prima facie presumed to be insane, and that he cannot be convicted unless and until the Commonwealth adduces sufficient evidence to overcome the presumption of insanity and establish his sanity: Com. v. Scovern, 292 Pa. 26; Com. v. Endrukat, 231 Pa. 529.

The trial judge erred in refusing to admit the testimony given by two alienists at the preliminary trial of defendant's sanity because those witnesses could not be brought into court.

*Charles C. Gordon,* Assistant District Attorney, with him *John Monaghan,* District Attorney, for appellee,

*Mr. Gray did not represent defendant at the trial.

cited: Webber v. Com., 119 Pa. 223; Com. v. Endrukat, 221 Pa. 529.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 7, 1928:

Defendant was indicted in March, 1923, for the murders of Mary Cilione, his second cousin, and also of Theodora Cilione, her mother. In September, 1923, he was adjudged to be insane at that time, by a special jury, and committed to the State Hospital for the Criminal Insane at Farview, Pa., for "so long as [he] shall continue to be of unsound mind, and until he shall......no longer......need the remedial or custodial care of said hospital." Under the commitment, when the patient was "restored to mental sanity, the superintendent of the hospital" was to report that fact to the court. On February 14, 1927, Dr. W. M. Lynch, superintendent of the hospital, reported that defendant has "sufficiently recovered and [did] not need the care and treatment of [the] hospital," and by order of court, February 15, 1927, he was formally discharged from the institution into the custody of the sheriff of Philadelphia County, with directions to return him to the county prison, there to await trial on the indictments found in 1923.

At the trial, which took place in May, 1927, counsel for defendant objected to the introduction of any testimony on the part of the prosecution until the latter had proved that the prisoner had recovered his reason and was at that time of sound memory and discretion within the meaning of the law. The trial judge allowed the Commonwealth, over the objection of defendant's counsel, to put in evidence the full record of the prior finding of insanity, and of the commitment to the asylum and subsequent discharge therefrom; then to proceed with the trial of the case. Defendant was found guilty of first degree murder for the killing of Mary Cilione, and sentenced to life imprisonment. He was found guilty of second degree murder for the killing of Theo-

dora Cilione, and sentenced to from ten to twenty years imprisonment. He has appealed from these judgments.

Appellant contends that, since he was adjudged insane in 1923, he is presumed to continue in that state until it is shown that his sanity returned (citing 6 A. L. R. 568, 588, and cases there mentioned), and that this fact must be found by the verdict of a jury; but the presumption relied on arises only in cases where the cause of disorder or insanity is continuing and permanent in its nature (People v. Schuler, 261 Pac. 1059, decided in California in 1927; Sims v. State, 99 S. W. (Texas) 555; Thomson v. State, 83 So. (Fla.) 291; see also Com. v. Loomis, 270 Pa. 254), and the evidence here indicates no such cause of disorder or permanent mental condition.

We have the evidence of the prior finding as to the prisoner's then mental state, his commitment to an asylum and discharge therefrom, but the record contains no proof that he was mentally irresponsible at the time now in question. Dr. Lynch, superintendent of the lunatic asylum in which Cilione was confined, testified that "during remissions of dementia præcox [the malady which afflicts defendant] a man is responsible," and that defendant had enjoyed a condition of remission for about two years prior to leaving the witness's care. Dr. Baldi, also called by defendant as a witness, had the latter constantly under his professional care, at the county prison, after he left the asylum. When asked the question, "Is he sane or insane now?" this witness replied: "It would be hard for any doctor to say that, because, since his admission [to the county prison] the second time, he comes refusing to talk on the advice of counsel." Dr. Baldi then explained that the defendant had so informed him. We may add that counsel for defendant seemed to avoid asking his witnesses as to the prisoner's insanity at the time of trial. The evidence already noted is the only proof on this point, and it is not such as to compel a finding that defendant was men-

tally incompetent to act in court or, with the aid of counsel, to conduct his defense.

In Com. v. Loomis, 270 Pa. 254, 258, 259, 260, one Shrope was indicted for the same murder with which the defendant Loomis was charged.    Under these circumstances, in 1918, he was placed on the stand as a witness for the State in the trial of Loomis.    In 1919, when Shrope himself was called for trial, he was judicially found to be "insane and unable to conduct his defense."    As the result of this finding, he was sent to a lunatic asylum, where he was confined when Loomis was again placed on trial in 1920.    On this state of facts, instead of calling Shrope to the stand, as had been done in the first Loomis trial, the State offered the notes of his former testimony taken at that time.    On the appeal reviewed in 270 Pa. the admission of such notes was assigned as error.    In passing on the assignment, we said that "incompetency" to act in court, in the legal acceptance of that term, "does not necessarily follow from insanity"; that, to make one incompetent to act in court, "he must at the time......be......under the influence of his malady."    We further said: "The judgment of the court, finding one of unsound mind, is [not necessarily] conclusive that he remains so."    As to the evidential value of a prior commitment to an insane asylum on a judicial finding (such as the one now pleaded in the present case), we there said that it "does not necessarily warrant the presumption that the patient [was] mentally incompetent" to act in court at a subsequent time; that additional evidence was necessary to establish such incompetency; adding that the "only effect of the adjudication" of Shrope's insanity "was to prevent his immediate trial," and that such adjudication was not enough to excuse calling him to the stand as a witness or to justify the admission of the notes of his former testimony.    Then we added, that, if it was true, as stated by expert testimony, that Shrope, though he had been adjudged insane, nevertheless had the abil-

ity to testify intelligently at the time of the trial, "he should have been produced." All of which is adverse to the contention of appellant and sustains the position of the trial judge in the present case.

The trial judge states that, although not compelled to allow a preliminary inquest (Com. v. Scovern, 292 Pa. 26), he would have done so at the time of trial, had that course been requested of him; but defendant failed to petition for a separate examination on the question of his sanity, to submit evidence directly on the point, or to ask that it be sent to the trial jury. There was in evidence, however, the appearance and demeanor of the prisoner, the petition of the superintendent of the hospital for the insane praying his discharge from that institution, and the order of the court discharging him into the custody of the sheriff; so we cannot rule that the court below had no legal right to be satisfied by such evidence that defendant was of sufficiently sound mind to comprehend his position and make a defense: Com. v. Barnes, 280 Pa. 351, 355.

As stated in the opinion of the trial judge: "There is nothing in the verdict of the special jury of September 7, 1923, to indicate that the insanity from which [that tribunal found] the defendant was then suffering was of a permanent character or forbade the reasonable expectation of recovery. The very commitment of the prisoner to the State Hospital at Farview implied that there were probabilities of recovery. It provided that the defendant should be kept in strict custody so long as the said Francesco Cilione shall continue to be of unsound mind, and until he shall have been [so] restored to mental sanity as no longer to need the remedial or custodial care of said hospital."

Of course, a person who, by reason of insanity, is unable to comprehend his position and to make a rational defense, cannot be tried on a criminal charge while in that condition: Com. v. Scovern, supra; see also Webber v. Com., 119 Pa. 223, and Com. v. Endrukat, 231 Pa.

529. The last two cases are relied on by appellant, but they are cited by the Commonwealth also, and, when properly understood, sustain the rulings of the court below in the present case.

In Com. v. Endrukat, the defendant, having been found insane at a former trial (by a verdict duly rendered, so far as that issue was concerned), committed to an asylum and subsequently released (as in the present case) on a certificate of the superintendent of the institution, when arraigned at the trial reviewed in 231 Pa. 529, asked that "a jury be impanelled to try the question of his sanity at that time." The judge, before passing on this request, offered to hear "testimony" to show that defendant was insane, but his counsel tendered none. Thereupon the application for a jury trial on the issue of present insanity was refused, and the prisoner put to trial on the indictment before the court. He was found guilty of murder of the first degree and sentenced to death. The sentence was sustained by us. If a prior finding of insanity must, under all circumstances, even after the person's discharge from the asylum on the statutory certificate of the superintendent, be treated as prima facie proof of continuing insanity, as counsel would have us hold, then the court below in the Endrukat Case had no legal right to put the burden on defendant of producing testimony to prove his insanity, as it did, and which course we approved by affirming the subsequent conviction. It will not do to dismiss that decision, as counsel for appellant suggests we should, by saying, "the only defense relied on was a plea of former jeopardy." Our report of the case clearly shows that we took cognizance of the fact that the prior finding of insanity was brought to the attention of the trial court (in point of fact, it was spread upon the record in the plea of former jeopardy); and, there having been a sentence to death on a record containing proof of such a finding, if it had the conclusive effect which appellant

contends for, this court would not have sustained the judgment against the prisoner.

The Endrukat opinion shows that,—as stated in Webber v. Com., 119 Pa. 223, 240,—in cases like the present, if the judicial mind is convinced by evidence satisfactory to it of the prisoner's sanity when called for trial, "there is nothing in [our law] which makes it obligatory upon the court to order a preliminary inquest." (See also Com. v. Scovern, supra, pp. 30-33.) It shows also that a prior finding of insanity, without more, is not enough in itself to require that the question of the prisoner's sanity at the time of a subsequent trial be submitted to the jury trying the case; and in the present instance there was no other evidence which would have warranted that course, as we have already pointed out.

True, in the Webber Case, the court submitted to the jury charged with the disposition of the indictment the question of the prisoner's sanity at the time of the trial, while in the present case that course was not pursued; but when, as here, no issue of the kind indicated is formally raised, no request is made of the court to submit such an issue to the jury, and the presiding judge certifies that, from the "appearance and actions" of the prisoner, and the other evidence in the case, his judicial conscience is fully satisfied of the sanity of defendant during his trial, we will not reverse because the jury was not permitted to pass on that question.

If counsel for defendant wished to raise the issue as to defendant's sanity at the time of trial, he should have petitioned the court for a preliminary inquiry, or defendant could have asked to have the issue tried by the same jury which determined the merits; but neither course was pursued, and under these circumstances his exceptions to the action of the court below in proceeding with the trial of the case and admitting the evidence offered by the Commonwealth, will not avail him.

We may add that all other issues, including that of the sanity of the accused at the time of the homicide,

were correctly submitted to the jury and found against him.

In another assignment of error, defendant complains of the refusal of the trial judge to admit the notes of testimony given by two alienists at the preliminary trial of defendant's sanity.   The Act of May 23, 1887, P. L. 158, provides, by section 3, that "Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding before a court of record,......if such witness afterward die, or be out of the jurisdiction so that he cannot be effectively served with a subpœna, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason, properly proven notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue."   Defendant's offer to prove his inability to call the two witnesses consisted merely of the statement that one of them was "sick," and that the subpœna server had been unable to obtain service on the other.   This offer was not sufficient to place the witnesses within those classes enumerated by the act in order to justify the introduction of the notes of their former testimony: the assignment, therefore, is overruled.

We have passed on all the assignments which call for special consideration and find no reversible error.   The evidence sustains the verdicts, and the sentences thereon were properly entered.

The judgments appealed from are affirmed, and the record is remitted to the court below, to the end that the sentences, already imposed, may be carried out.