**UNITED STATES ex rel. SMITH v. BALDI et al.**

**No. M–1408.**

United States District Court
E. D. Pennsylvania.

Feb. 20, 1951.

Welsh, Ganey, and Clary, JJ., dissented.

Thomas D. McBride, of Philadelphia, Pa., for relator.

Randolph C. Ryder, Deputy Atty. Gen., Colbert C. McClain, Asst. Dist. Atty., of Philadelphia, Pa., Charles J. Margiotti, Atty. Gen., Harrington Adams, Deputy Atty. Gen., and James W. Tracey, Jr., First Asst. Dist. Atty., of Philadelphia, Pa., for respondents.

Before KIRKPATRICK Chief Judge, WELSH, BARD, GANEY, McGRANERY, CLARY and GRIM, District Judges.

BARD, District Judge.

On October 9, 1950 our esteemed colleague, Judge Welsh, granted a rule to show cause why the writ of habeas corpus prayed for in relator's petition should not be granted and ordered a stay of execution. The disposition of this rule is now before us.

In accordance with our established practice, we denied the respondent's petition to convene a full bench. We have never granted such a petition. It has been done only, on a few occasions, at the request of the Judge to whom the matter was originally assigned. In the instant case we have honored Judge Welsh's request so to convene. We heard argument on the legal phases of this matter as they appeared from the relator's petition, the respondent's answer and brief.

We conclude that this petition for writ of habeas corpus must be denied.

The relator is a self-confessed murderer awaiting execution of the death sentence.

On November 9, 1949 this Court, also sitting en banc at Judge Welsh's request, in an opinion written by the Chief Judge, discharged a prior petition for writ of habeas corpus for lack of territorial jurisdiction over the person of the relator. United States ex rel. Smith v. Warden of Philadelphia County Prison, D.C., 87 F.Supp. 339, affirmed, 3 Cir., 181 F.2d 847. Judge Welsh dissented 87 F.Supp. 344. In a concurring opinion, 87 F.Supp. 341, the writer of this opinion pointed out that we also lacked jurisdiction for the reason that the relator had failed to exhaust his state remedies.[1]

Since then relator has exhausted his state remedies. The identical petition now before us was denied on January 20, 1950 by the Pennsylvania Supreme Court in a lengthy opinion by the late Chief Justice Maxey, see Commonwealth ex rel. Smith v. Ashe, Warden, 364 Pa. 93, 71 A.2d 107, and on October 9, 1950 certiorari was denied by the United States Supreme Court, see 340 U.S. 812, 71 S.Ct. 40.

While it is customary to relate the necessary facts in an opinion of this nature, this case has repeatedly been before the federal and state courts and has taken up more than its fair share of the various legal reports. It is sufficient to point out that these facts surrounding the murder and the relator's arraignment and trial can be found in the following opinions: Commonwealth v. Smith, 362 Pa. 222, 66 A. 2d 764; United States ex rel. Smith v. Warden of Philadelphia County Prison, D. C., 87 F.Supp. 339, supra; Commonwealth ex rel. Smith v. Ashe, Warden, 364 Pa. 93, 71 A.2d 107, supra.

Under our form of government, state and federal sovereigns exist side by side. Though the federal government, in the words of Chief Justice Marshall, "is supreme within its sphere of action", McCulloch v. Maryland, 4 Wheat. 316, 405, 4 L.Ed. 579, it is nevertheless limited in its powers. "The happy relation of States to Nation—constituting as it does our central political problem—is to no small extent dependent upon the wisdom with which the scope and limits of the federal courts are determined", from "The Business of the Supreme Court" by Frankfurter and Landis p. 2.

Federal district courts are courts of limited jurisdiction and no presumption of jurisdiction attaches to such courts. A district court should be alert, before assuming jurisdiction in any case, to see that it is within the authority conferred upon it. Mr. Justice Harlan said in a leading case on the subject, Bors v. Preston, 111 U.S. 252, 255, 4 S.Ct. 407, 408, 28 L.Ed. 419, when the inquiry involves the jurisdiction of a federal court "the presumption, in every stage of the cause, is that it is without their jurisdiction, unless the contrary appears from the record."

State courts frequently have been zealous to avoid any interference with federal jurisdiction. A celebrated case arose out of this district years ago. In 1855 Judge Kane, one of our predecessors in the District Court in this district, committed one Williamson to jail for contempt of court. Williamson claimed he had acted in accordance with the laws of the state pertaining to slavery. He then appealed to the Pennsylvania Supreme Court to release him from jail through a writ of habeas corpus. The Pennsylvania Supreme Court denied the writ. Passmore Williamson's Case, 26 Pa. 9. The Court held that it was an issue pure and simple of whether the federal court was supreme within its own sphere, or whether a state court had the right to invade the federal domain and overrule decisions of a federal court.

The opinion was written by that famous jurist, Justice Jeremiah S. Black, prior to the time he became a cabinet officer in the federal government. His stirring language is still a beacon clearly illumining the path to be trod by state and federal judges in maintaining the delicately adjusted balance between the federal government and the states. Said Justice Black, 26 Pa. at page 17: "A *habeas corpus* is not a writ of error. It cannot bring a case before us in

---

1. Judge Clary and Judge Grim became members of this Court on November 1, 1949. The argument on the prior petition was heard before that date. They took no part in the consideration or decision handed down on November 9, 1949.

such a manner that we can exercise any kind of appellate jurisdiction in it. On a *habeas corpus,* the judgment even of a subordinate state court cannot be disregarded, reversed, or set aside, however clearly we may perceive it to be erroneous, and however plain it may be that we ought to reverse it if it were before us on appeal or writ of error. We can only look at the record to see whether a judgment exists, and have no power to say whether it is right or wrong. It is conclusively presumed to be right until it is regularly brought up for revision. * * * It applies with still greater force, or at least for much stronger reasons, to the decisions of the federal courts. Over them we have no control at all, under any circumstances, or by any process that could be devised. Those tribunals belong to a different judicial system from ours. They administer a different code of laws and are responsible to a different sovereignty. The District Court of the United States is as independent of us as we are of it—as independent as the Supreme Court of the United States is of either. What the law and the Constitution have forbidden us to do directly on writ of error, we, of course, cannot do indirectly by *habeas corpus.*"

▮▮ To subject the judicial acts of the highest state court to review by the lowest federal court in routine cases where no constitutional issues are involved was never contemplated by the framers of the Constitution and no such grant has ever been conferred upon the district courts by the Congress, nor has it ever been sanctioned by any language of the Supreme Court. Nor, unless special circumstances prevail, should the lowest federal court reverse the highest state court in cases where the constitutional issues have been disposed on the merits by the highest state court in an opinion specifically setting forth its reasons that there has been no denial of due process of law, and where the record before the state court and the allegations in the petition for the writ before the federal court fail to disclose that the state in its prosecution departed from constitutional requirements. That is this case.

For this Court to reverse or overthrow the decision of the highest state court, in the instant case—particularly after the Supreme Court has refused to review the state court's decision, meaningless though that denial may be—would make mock of the rights reserved to the states in our Federal Constitution, upon which our system of dual sovereignty is founded.

▮▮ Too, the language of Judge Phillips, of the Court of Appeals for the Tenth Circuit, in Whitney v. Zerbst, Warden, 62 F.2d 970, at page 972, is pertinent: "Where one seeks discharge from confinement after conviction for an offense upon a petition for habeas corpus, the sole questions presented are whether petitioner was convicted by a court having jurisdiction of his person and the offense, and whether the sentence pronounced was one within the power of the court. The writ cannot be made a substitute for an appeal. Cardigan v. Biddle, 8 Cir., 10 F.2d 444; McIntosh v. White, 8 Cir., 21 F.2d 934; Knewel v. Egan, 268 U. S. 442, 45 S.Ct. 522, 69 L.Ed. 1036".

▮ A review by this Court of the state court's decision would place the relator in the preferred status of having two opportunities to litigate the identical question to the United States Supreme Court. As was said by Circuit Judge, now Mr. Justice, Minton: "Surely, the petitioner has not the right to litigate twice to the Supreme Court of the United States the legality of his detention, by employing the process of two different courts." See United States ex rel. Parker v. Carey, 7 Cir., 135 F.2d 205, 207, certiorari denied 320 U.S. 755, 64 S.Ct. 61, 88 L.Ed. 449.

▮ Accordingly, it is the law that where remedies are available under state law and the highest state court has considered and adjudicated the merits of the relator's contentions, including a full and fair adjudication of the federal contentions raised, and the United States Supreme Court has either reviewed or declined to review the state court's decision, then the district courts will not ordinarily, upon writ of habeas corpus, re-examine the questions thus adjudicated. Ex parte Hawk, 321 U.

S. 114, 118, 64 S.Ct. 448, 88 L.Ed. 572; White v. Ragen, Warden, 324 U.S. 760, 764–765, 65 S.Ct. 978, 89 L.Ed. 1348; Parker, Limiting the Abuse of Habeas Corpus, 8 F.R.D. 171, 174, 175–178.

Although relator's counsel would have us believe otherwise, the Pennsylvania Supreme Court's decision in Commonwealth ex rel. Smith v. Ashe, Warden, supra, unquestionably goes to the merits of the case. That court decided that the trial judges' ruling that the defendant Smith was sane was done in accordance with the state law. In addition to adjudicating all state questions, the Pennsylvania Supreme Court gave a full and fair adjudication of the federal contentions raised in the instant petition. The Pennsylvania Supreme Court decided that there was no denial of due process in the manner in which relator's sanity was determined, nor in the manner in which he was represented by counsel, nor in any of the other federal contentions raised by relator. The adjudication of these federal questions by the highest state court was then presented to the Supreme Court who declined to review. Under these circumstances, the law is clear. District Courts will not ordinarily re-examine, upon writ of habeas corpus, the questions thus adjudicated. Ex parte Hawk, supra; White v. Ragen, supra.

Our attention has been called to the recent decision of Darr v. Burford, Warden, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761. That decision enunciated the rule that accustomed procedure requires a petition for certiorari to be made to the Supreme Court from a state court's refusal of collateral relief before a federal district court will consider an application for habeas corpus on its merits. Relator's petition for certiorari in the instant case perfected the procedural prerequisite demanded in the Darr decision.

In addition to the exact holding of the Darr decision we are given extensive exposition in three opinions concerning the meaning of the denial of certiorari. We think we comprehend what the denial of certiorari does *not* mean, but we are not too sure that we understand with clarity what the denial of certiorari in habeas corpus cases *does* mean. We know it does not mean an adjudication on the merits, opinion of the Court, 339 U.S. at page 214, 70 S. Ct. at page 595. Does it mean that we of the District Court in our consideration of the petition before us should give effect to such denial? The Supreme Court in its opinion in the Darr case expressly declined in the following language to comment on this phase since the precise point was not at issue before the Court, 339 U.S. at page 214, 70 S.Ct. at page 595: "There is an insistence voiced by the dissent that we determine what effect the lower federal courts should accord a denial of certiorari by this Court when the state prisoner later applies for federal habeas corpus. The issue of the effect of such a denial apparently could arise only in a case where after our refusal, the state prisoner presented his application to another federal court." The issue is here in the instant case. Since it is, do the words in the Darr opinion— "Whether a refusal to grant certiorari imports an opinion on any issue or not, * *." 339 U.S. at page 214, 70 S.Ct. at page 595— permit us to cogitate whether we should attach some legal significance to the denial of certiorari? We decline to do so. We think any affirmative statement as to "the effect of such a denial" should come only from the Supreme Court.

Furthermore, the concurring opinion and the dissenting opinion, combined representing a majority of the Court, on this point admonish us not to attach any substantive legal significance to the denial of certiorari. The concurring opinion promulgates the following rule, 339 U.S. at page 219, 70 S. Ct. at page 598: "* * * when the reasons for a denial of certiorari are not stated, the denial should be disregarded in passing upon a subsequent application for relief, except to note that this source of possible relief has been exhausted." The dissenting opinion explains the significance of denial of certiorari in the following language, 339 U.S. at page 226, 70 S.Ct. at page 601: "This Court has said again and again and again that such a denial has no legal significance whatever bearing on the merits of the claim. The denial means that

this Court has refused to take the case. It means nothing else."

██ We, therefore, deem the denial of certiorari to be without effect and to be of no legal significance in our consideration of the relator's petition before us, except to note that he has fulfilled the procedural requirement of the Darr decision, entitling him to elicit our consideration of his petition.

We do not think that anything in the Darr decision changes the law of the Hawk decision as expressed heretofore in this opinion, namely, that under the particular facts of this case, district courts will not ordinarily re-examine, upon writ of habeas corpus, the questions thus adjudicated. In fact there is abundant language in the opinion of the Court in the Darr case that would indicate our position is sound: "Even after this Court has declined to review a state judgment denying relief, other federal courts have power to act on a new application by the prisoner. On that application, the court may require a showing of the record and action on prior applications, and may decline to examine further into the merits because they have already been decided against the petitioner. Thus there is avoided abuse of the writ by repeated attempts to secure a hearing on frivolous grounds, and repeated adjudications of the same issues by courts of coordinate powers", 339 U.S. at page 215, 70 S.Ct. at page 596.

Again the Darr opinion gives us further guidance, 339 U.S. at page 218, 70 S.Ct. at page 597: "A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings, that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused."

We are unable to find in the record before the state courts or in the petition for the writ presently before us, that any special or extraordinary circumstances exist sufficient to justify further inquiry by us into the merits of petitioner's allegations.

In a valid exercise of sound judicial discretion, we decline to re-examine, upon writ of habeas corpus, the questions thus adjudicated. In reaching that conclusion we have followed the doctrine of Salinger v. Loisel, 265 U.S. 224, 231, 44 S.Ct. 519, 521, 68 L.Ed. 989, "* * * each application is to be disposed of in the exercise of a sound judicial discretion guided and controlled by a consideration of whatever has a rational bearing on the propriety of the discharge sought."

In this manner the power of the Great Freedom Writ of Habeas Corpus is left unimpaired and at the same time is kept free from abuse by repeated petitions on trivial grounds. To do other than we have done would be an unseemly interference by a federal court with state administration of criminal justice.

The petition for writ of habeas corpus is denied.

The Chief Judge, Judge McGranery and Judge Grim concur in this opinion.

WELSH, GANEY and CLARY, District Judges (dissenting).

No extended discussion is required to set out the views of the minority. The majority opinion holds that the action of the Supreme Court of Pennsylvania in the case of Commonwealth ex rel. Smith v. Ashe, Warden, 364 Pa. 93, 71 A.2d 107 disposes of the federal constitutional questions involved in this case and that a review of the factual situation is not warranted in this proceeding.

The case is before this Court on the petition for the writ of habeas corpus and the return of the respondent's thereto. The record discloses that no testimony was taken in the proceeding before the Supreme Court of Pennsylvania. Whether the Supreme Court of Pennsylvania had any facts before it or whether it actually made any findings of fact is not clear. Relator challenges the right of the Supreme Court of Pennsylvania to make any fact determinations on the record before it.

In the state of the record in that regard, in fairness to the applicant and prerequisite

to any legal decision, in our view of the case it appears necessary to have specific findings of fact on which to base such a legal determination. In a matter involving important federal constitutional questions the facts should be very clear. No testimony was taken in this Court. Judge Welsh in granting the rule to show cause determined that sufficient facts had been alleged which warranted factual investigation. We are not persuaded that the present state of the record warrants legal determination. We feel that the real facts should be determined from testimony taken at a hearing. The Judicial Code, 28 U.S.C.A. § 2243, provides, in part, that where either a writ of habeas corpus or a show cause order has been granted "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."

We, therefore, cannot join in an action which we believe at this time to be premature.