UNITED STATES ex rel. SMITH *v.* BALDI,
SUPERINTENDENT, PHILADELPHIA
COUNTY PRISON.

No. 31.  Argued April 29–30, 1952.—Reargued October 13–14,
1952.—Decided February 9, 1953.

*Thomas D. McBride* argued the cause for petitioner. With him on the brief was *Herbert S. Levin.*

*Randolph C. Ryder,* Deputy Attorney General of Pennsylvania, argued the cause for respondent. With him on the brief were *Robert E. Woodside,* Attorney General, and *Frank P. Lawley, Jr.,* Assistant Attorney General.

*Richardson Dilworth,* District Attorney for the County of Philadelphia, filed a brief for the City and County of Philadelphia, urging that the judgment be reversed and the cause remanded.

MR. JUSTICE REED delivered the opinion of the Court.

Petitioner was convicted of murder and sentenced to death by the State of Pennsylvania. The crime was committed in January 1948. Petitioner was without counsel when he appeared for arraignment on February 25, 1948. The presiding judge asked a lawyer present in the courtroom to advise petitioner how to plead. This lawyer, who knew nothing about petitioner, advised him to enter a plea of "not guilty." On September 21, 1948, after several continuances, the District Attorney, to-

gether with petitioner's state-named counsel, who had been appointed after arraignment, and a judge of the sentencing court, agreed that a plea of "guilty" would be substituted for the earlier plea of "not guilty." This was done so that the State could present its evidence that the crime was first degree murder, and petitioner's counsel would then have additional time in which to procure out-of-state evidence at State expense to support the contention that petitioner was insane. The State put in its evidence on September 21, 1948. At hearings held on October 28, 1948, and November 5, 1948, defense counsel introduced evidence tending to show that petitioner was insane. The sentencing court was not satisfied by the evidence that petitioner had been insane either at the time of the murder or at any time thereafter, and on February 4, 1949, sentenced him to death.

While the docket entries as shown in the trial record differ from the notes on the indictment, as to whether the sentencing court found petitioner guilty of first degree murder on September 21, 1948, or did not so find until February 4, 1949, the difference is immaterial. According to the entries written in longhand on petitioner's indictment (192 F. 2d, at 569), the entry noting the adjudication of guilty of murder in the first degree on February 4, 1949, is not in proper order. It appears to have been inserted between the entry stating that petitioner had withdrawn his plea of not guilty and entered a plea of guilty on September 21, 1948, and the entry of November 5, 1948, stating that "additional testimony [had been] heard and held under advisement." If the contested and out-of-order date of "2/4/49" is removed, the notes on the indictment would agree with the docket entry of September 21, 1948, and would read "[A]fter hearing testimony both for the Commonwealth and the defendant . . . the defendant is adjudged guilty of murder in the 1st

degree." [1] Since the entry of September 21, 1948, was made following a plea of guilty and with opportunity for further evidence as to insanity, it was not in any way binding or even persuasive. It was the sentence on February 4, 1949, after the insanity hearing that was the final adjudication.

An appeal was taken from this judgment on a full record to the State Supreme Court where it was asserted that it was an abuse of discretion by the sentencing court to have imposed the death sentence in the circumstances of the case. The conviction was affirmed. 362 Pa. 222, 66 A. 2d 764. No effort was made to secure from this Court a writ of certiorari to review that affirmance. Petitioner thereafter filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. The petition was denied on the ground that petitioner was not within the jurisdiction of the court at the time the proceeding was instituted. 87 F. Supp. 339. On appeal the denial was affirmed by the Court of Appeals for the Third Circuit. 181 F. 2d 847. No petition for certiorari to review that decision was filed with this Court. A petition for habeas corpus was then filed in the State Supreme Court. This was entertained on the merits and denied on the ground that there was no denial of due process of law and there was "nothing in this record which convinces us that this relator was insane when he committed the murder charged or when he pleaded guilty or at the time

---

[1] On appeal the Supreme Court of Pennsylvania stated that petitioner had been adjudged guilty of murder in the first degree on the former date, September 21, 1948. *Commonwealth* v. *Smith,* 362 Pa. 222, at 223, 66 A. 2d 764. In its opinion denying the subsequent petition for a writ of habeas corpus the Pennsylvania court held that "[w]hether this judgment was entered on September 21, 1948, or on February 4, 1949, is unimportant in these proceedings." *Commonwealth ex rel. Smith* v. *Ashe,* 364 Pa. 93, at 112, 71 A. 2d 107, at 116.

he was sentenced to death." 364 Pa. 93, at 119, 71 A. 2d 107, at 120. Immediately following our denial of a timely petition for certiorari, 340 U. S. 812, petitioner filed a second application for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. The District Court dismissed the petition, noting that all the issues presented in the petition had been before the State Supreme Court. 96 F. Supp. 100, 105. On appeal the Court of Appeals for the Third Circuit affirmed. 192 F. 2d 540. We granted certiorari, 343 U. S. 903. The petitions involved in the State habeas corpus proceedings presented the identical due process questions which are before us now, and the complete record of the State trial proceedings—appellate as well as those in State habeas corpus—were before the District Court and the Court of Appeals.

The first point we consider is the question of the effect to be given our denial of certiorari in a habeas corpus case. Both the District Court (96 F. Supp. 100, 105) and the Court of Appeals (192 F. 2d 540, 544) concluded that the denial of certiorari in habeas corpus cases means nothing except that certiorari was denied. As the effect of a denial of certiorari was then in doubt, we granted this petition primarily to determine its effect. As this conclusion is spelled out more fully in the opinions in *Brown* v. *Allen,* 344 U. S. 443, decided today, the answer is short. Our denial of certiorari in habeas corpus cases is without substantive significance.

The next contention of petitioner is that he was denied due process. In substance, this issue presents questions as to (1) whether the State should have allowed him to plead guilty without having first formally adjudicated the question of his mental competency, and (2) whether it should have permitted him to plead at all to a capital offense without affording him the technical services of a psychiatrist.

Petitioner had been committed to an institution for mental patients in New York three years prior to the commission of the crime with which he is charged. At the New York institution his disease was diagnosed as dementia praecox. After four months he was discharged as recovered. Later, he voluntarily committed himself to the Philadelphia General Hospital for fear that he might harm someone. Ten days later he was released because there was "no evidence of [his] having any psychosis." These facts were presented to the trial court prior to sentencing on February 4, 1949.

In contending that Pennsylvania denied him due process by convicting him of murder on his plea of guilty without an adjudication or evidence as to his sanity, petitioner points to language used by the State Supreme Court indicating, in his view, a holding of sanity based on the plea of guilty, instead of on evidence. There that court stated that the plea of guilty was an admission of sanity, and that the evidence of petitioner's mental condition taken by the trial court after the plea of guilty went to the question of the appropriate penalty.[2] The complete answer to petitioner's contentions, however, is found in the succeeding paragraph where the court said:

> "If the evidence taken as to the defendant's mental condition for the purpose of enabling the court to assess the proper punishment, raised a substantial doubt as to Smith's sanity, it would have been the duty of his counsel to have moved to withdraw the

_____

[2] "When counsel for the relator entered a plea of guilty to the indictment, that plea admitted the prisoner's sanity because no insane person can be guilty of murder. The testimony relating to Smith's mental condition, taken after the plea had been entered, was for the purpose of providing the court with data which it could use in determining the appropriate penalty to be imposed upon the defendant." 364 Pa. 93, at 112, 71 A. 2d 107, at 117.

plea of guilty so that a plea of 'not guilty because of insanity' could be entered. If the trial court had denied this motion the defendant could have taken an exception and on appeal this Court would have decided whether or not the court in denying the motion had abused its discretion." 364 Pa. 93, at 113, 71 A. 2d 107, at 117.

Petitioner furthermore maintains that the sentence imposed violates due process because he was advised to plead "not guilty" at arraignment on the snap advice of a court-designated lawyer who had never before laid eyes on petitioner. As a consequence of this offhand plea of not guilty, petitioner contends he lost his only chance to require that his mental competency be tried at the outset by a jury.[3]

Assuming that such a chance was in fact lost, it does not follow that due process was denied. As pointed out above, the Pennsylvania Supreme Court emphasized that even after changing his plea to "guilty" on the advice of counsel familiar with this case, there was still adequate

---

[3] Pennsylvania law provides that counsel may ask for a special trial to test his client's sanity at arraignment:

"The same [lunacy commitment] proceedings may be had, if any person indicted for an offense shall, upon arraignment, be found to be a lunatic, by a jury lawfully impanelled for the purpose, or if, upon the trial of any person so indicted, such person shall appear to the jury charged with such indictment to be a lunatic, the court shall direct such findings to be recorded, and may proceed as aforesaid." 19 Purdon's Pa. Stat. Ann. § 1352.

Whether such a jury trial at the outset will be granted depends on the discretion of the trial judge. He may defer the inquest and allow the question to be decided by the jury trying the indictment. *Webber* v. *Commonwealth,* 119 Pa. 223, 13 A. 427; *Commonwealth* v. *Scovern,* 292 Pa. 26, 140 A. 611; *Commonwealth* v. *Cilione,* 293 Pa. 208, 142 A. 216; *Commonwealth* v. *Iacobino,* 319 Pa. 65, 178 A. 823.

opportunity to withdraw the second plea and substitute a plea of "not guilty because of insanity" had petitioner's counsel entertained any doubt of his client's mental competency. 364 Pa., at 113, 71 A. 2d, at 117. When Pennsylvania furnished petitioner counsel for his arraignment, we cannot say his error in advising a "not guilty" plea made all future proceedings unconstitutional when there was ample opportunity to rectify the error, if any there was, by a hearing on insanity. A claim of denial of due process can hardly be predicated upon the failure of a defense move.

This brings us to petitioner's second point: That the assistance of a psychiatrist was necessary to afford him adequate counsel. The record of the trial-court proceedings reveals that on November 5, 1948, a psychiatrist, who had examined petitioner at the court's request, testified as to petitioner's sanity at the time of the trial and at the time of the commission of the crime. In addition, on October 28, 1948, two other psychiatrists were called by the defense to testify as to petitioner's mental competence. On the same day, petitioner's counsel also introduced various reports and letters dealing with his client's mental history. On this evidence the court determined his sanity. Petitioner further asserts that he should have been given technical pretrial assistance by the State. Although the trial judge testified that defense counsel made no such request, petitioner here states that the trial court refused to appoint a psychiatrist to make a pretrial examination. We cannot say that the State has that duty by constitutional mandate. See *McGarty v. O'Brien,* 188 F. 2d 151, 155. As we have shown, the issue of petitioner's sanity was heard by the trial court. Psychiatrists testified. That suffices.

Petitioner's argument that an insane man may not be executed proceeds on the assumption that he has been found to be insane. The law of Pennsylvania, as an-

nounced by the Supreme Court of the State, provides full protection against the execution of the insane.

"It is a principle imbedded in the common law— and we administer the common law in Pennsylvania—that no insane person can be tried, sentenced or executed.

.      .      .      .      .

"A prisoner convicted of murder and under sentence of death is (like the relator in the instant case) still in *the hands of the law* and in a proper case the judiciary of the State can intervene by appropriate means to save an insane prisoner from execution. The judiciary has this power both under the statutes and under the common law." *Commonwealth ex rel. Smith* v. *Ashe,* 364 Pa. 93, 116–119, 71 A. 2d 107, 118–120. See *Phyle* v. *Duffy,* 334 U. S. 431; and *Solesbee* v. *Balkcom,* 339 U. S. 9.

Petitioner's final point is that the United States District Court committed error in refusing to hold a plenary hearing for determination of his sanity. This is refuted by *Brown* v. *Allen,* 344 U. S. 443, at 460–465, decided today.

In denying the first petition, the District Court received evidence from judges of the State trial panel, defense and prosecution counsel and others as to whether a fair hearing on petitioner's sanity had been accorded him by the State. In denying the second petition for habeas corpus, the District Court held that not "unless special circumstances prevail, should the lowest federal court reverse the highest state court in cases where the constitutional issues have been disposed on the merits by the highest state court in an opinion specifically setting forth its reasons that there has been no denial of due process of law, and where the record before the state court and the allegations in the petition for the writ before

the federal court fail to disclose that the state in its prosecution departed from the constitutional requirements. That is this case." *United States ex rel. Smith* v. *Baldi,* 96 F. Supp. 100, at 103.

This view of the proceedings accords with our holding in the *Brown* case, *supra.* As the trial and appellate State court records which were before the District Court show a judicial hearing, where on the plea of guilty the question of sanity at the time of the commission of the crime was canvassed, the sentence does not violate due process.

*Affirmed.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join, dissenting.*

Ever since our ancestral common law emerged out of the darkness of its early barbaric days, it has been a postulate of Western civilization that the taking of life by the hand of an insane person is not murder. But the nature and operation of the mind are so elusive to the grasp of the understanding that the basis for formulating standards of criminal responsibility and the means for determining whether those standards are satisfied in a particular case have greatly troubled law and medicine for more than a century. See Glueck, Mental Disorder and The Criminal Law (1925); Abrahamsen, Crime and the Human Mind (1944); Overholser, The Psychiatrist and the Law (to be published in April 1953 by Harcourt Brace & Co.) (particularly Chapter II). To this day, conflict and controversy regarding these problems bedevil the administration of criminal justice. See, *e. g.,* *Fisher* v. *United States,* 328 U. S. 463. The deep concern engendered in England just the other day by the case of John Thomas Straffen strikingly disclosed

---

*[See also opinion of MR. JUSTICE FRANKFURTER in *Brown* v. *Allen, ante,* p. 488, which also applies to this case.]

the unsatisfactory state of the law. See *The Times*, July 22, 1952, p. 3; July 23, 1952, p. 4; July 24, 1952, p. 3; July 25, 1952, p. 3; July 26, 1952, p. 7; August 30, 1952, pp. 2, 5; September 1, 1952, p. 5; September 4, 1952, p. 5; September 12, 1952, p. 7; *The Economist*, August 30, 1952, p. 494; and *The Lancet*, August 2, 1952, p. 239. (Especially comments subsequent to the action of the Home Secretary, which followed dismissal of Straffen's appeal by the Court of Criminal Appeal in *Regina* v. *Straffen*, [1952] 2 Q. B. 911.)

The law of Pennsylvania in the abstract on this controversial subject is clear and unassailable. "It is a principle embedded in the common law—and we administer the common law in Pennsylvania—that no insane person can be tried, sentenced or executed." *Commonwealth ex rel. Smith* v. *Ashe*, 364 Pa. 93, 116, 71 A. 2d 107, 118. In view of the fallibilities of human judgment regarding the same body of evidence, it is inevitable that one may be doubtful, and even more than doubtful, whether in a particular case a plea of insanity was properly rejected. It is not for this Court to find a want of due process in a conviction for murder sustained by the highest court of the State merely because a finding that the defendant is sane may raise the gravest doubts. But it is our duty under the Fourteenth Amendment to scrutinize the procedure by which the plea of insanity failed and defendant's life became forfeit. A denial of adequate opportunity to sustain the plea of insanity is a denial of the safeguard of due process in its historical procedural sense which is within the incontrovertible scope of the Due Process Clause of the Fourteenth Amendment.

One has only to read the opinions both of the four Judges who constituted the majority of the Court of Appeals and of the three dissenters to appreciate the tangled skein of procedural complexities in which the defendant in this case was hopelessly caught. 192 F. 2d

540. And I cannot read the opinion of Chief Judge Biggs, *id.*, at 549, without being left with such an unrelievable feeling of disquietude as amounts to a conviction that the accused in this case was deprived of a fair opportunity to establish his insanity. And this not the less so because the deprivation resulted from the tangled web that was woven for the defendant, even if unwittingly, by the courts of Pennsylvania.

But I am of the view that there is another reason, which in itself is for me conclusive, why this Court should not affirm the judgment below. It is that a new decisive factor, which was introduced for the first time here, requires reconsideration of the disposition below. After the case left the Court of Appeals it came to the knowledge of petitioner's counsel that the court-appointed expert, the professional witness on the issue of insanity on whose testimony the Pennsylvania courts relied, had himself been committed, as of January 12, 1952, because of an incurable mental disease which had deprived him of "any judgment or insight." This fact was brought to the notice of this Court in an affidavit not challenged by the respondent, which also averred that "this intellectual deterioration was evidenced even on a clinical level in January, 1951." The expert's report on Smith's sanity was made to the sentencing court on November 5, 1948. His disability was not known either to the District Court or the Court of Appeals in February and October, 1951, when they respectively ruled against the petitioner. Even uninformed judges may know that this kind of mental illness does not set in overnight but is the culmination of a long process. Indeed, the medical history, sketchy as it is, revealed by the affidavit filed here demonstrates the gradual manner in which the mental illness in question developed. The extent to which this affidavit vitiates the worth of the expert testimony taken by the sentencing court should not be made a mat-

ter of judicial notice. But to allow the victim of this testimony, which, in any event, has been brought into doubt, to go to his death without an opportunity for reassessment, by either State or federal court, of the basis for the rejection of his plea of insanity would constitute a denial of due process no less gross than if the sentence had been imposed without any hearing at all on the issue of sanity.

I need hardly point out that in a court of equity causes are disposed of on the facts as they appear at the time of the disposition, and that habeas corpus is certainly to be governed by the rules of fairness enforced in equity. The cause should, therefore, be remanded to the District Court for disposition of the new matter revealed in the affidavit filed here.

The Court does not reach this issue. Therefore I do not now decide whether this evidence raises a new ground which must first, under principles of exhaustion, be presented in the State courts or whether the federal court may properly view it simply as new evidence bearing on a claim already exhausted—that the determination of sanity was inadequate.