## DRAPER v. DENNO.

United States District Court
S. D. New York.
June 23, 1953.

Nancy Carley, Jackson Heights, N. Y., for petitioner.

Nathaniel L. Goldstein, Atty. Gen., State of N. Y., Vincent A. Marsicano, Asst. Atty. Gen., State of N. Y., Clarence J. Henry, Dist. Atty., Monroe County, Harry L. Rosenthal, Asst. Dist. Atty., Rochester, N. Y., of counsel, for respondent.

RYAN, District Judge.

This petition for a writ of habeas corpus has been filed by William H. Draper, a prisoner under sentence of death confined within this district in New York State Prison, Ossining, Westchester County, N. Y., following his conviction of murder in the first degree in the County Court of Monroe County, New York, by jury verdict rendered on April 24, 1952. Upon appeal to the New York Court of Appeals, the judgment of conviction was affirmed on November 20, 1952 without opinion, 304 N.Y. 799–800, 109 N.E.2d 342, 343; five judges concurred in the affirmance; Loughran, Ch. J. and Froessel, J., dissented in a memorandum reading:

> "The defendant's constitutional protection against compulsory self-incrimination was invaded when the trial prosecutor commented adversely and at length upon the defendant's refusal to take a truth serum test, see People v. Forte, 277 N.Y. 440, 14 N.E.2d 783; VIII Wigmore on Evidence, 3d Ed.,

2272–2273. The further comment of the District Attorney to the jury that they should not be misled by any idea that this defendant, who pleaded insanity, may be confined permanently to a hospital, thus suggesting that he might be released, was also improper."

Thereafter on January 7, 1953, the court added to its remittitur the following:

"Upon this appeal there was presented and necessarily passed upon the following questions: (1) whether the prosecutor, in violation of defendant's constitutional rights against self-incrimination, had implied in his summation that defendant's refusal to submit to a truth serum test was evidence of his guilt; (2) whether the trial court had improperly stated his determination of a question of fact in the case; and (3) whether the prosecutor had improperly advised the jury to find the defendant guilty even if he were insane. This Court held that the Fourteenth Amendment of the Constitution was not violated by the aforesaid statements of the District Attorney or the Court."

A petition was filed with the Supreme Court of the United States for a writ of certiorari to review the constitutional questions, which the New York Court of Appeals certified, and this petition was denied by the Supreme Court on April 27, 1953, 345 U.S. 944, 73 S.Ct. 839.

At the hearing before me no relevant facts appeared in dispute and no relevant testimony was offered. The case on appeal before the New York Court of Appeals and the petition to the Supreme Court were submitted and have been examined and considered by me on this application.

■ From the record of the proceedings heretofore had, I conclude that petitioner has "exhausted the remedies available in the courts of the State * * * by any available procedure". Sec. 2254, 28 U.S. C.A. I also conclude and am satisfied from the record that the "state process has given fair consideration to the issues * * * , and has resulted in a satisfactory conclusion." Brown v. Allen, 1953, 344 U.

S. 443, 463, 73 S.Ct. 397, 410. I find from the record, that the federal constitutional rights of petitioner have been protected, that there has been no denial of due process, and I conclude that the petition should be denied.

The indictment upon which the defendant was tried, charged Murder in the first degree and alleged that,

"The defendant, on or about July 17, 1949, at the Town of Greece, Monroe County, New York, wilfully, feloniously and of malice aforethought killed one Jennie O'Keefe by striking and beating her on the head and body with his hands and fists, thereby inflicting injuries which caused the death of said Jennie O'Keefe."

It may be observed, although not material to the issues now presented, that on a prior trial, the County Court, Monroe County, entered judgment sentencing defendant to life imprisonment, upon a verdict convicting the defendant of the crime of Murder in the first degree with a recommendation of clemency, Sec. 1044, Penal Law of New York, McK.Consol.Laws, c. 40; and that on appeal, because of errors on the trial, this conviction was reversed by the Appellate Division of the Supreme Court of New York, Fourth Judicial Department, 279 App.Div. 298, 104 N.Y.S.2d 703, and that on further appeal by the State to the Court of Appeals this reversal was affirmed with no opinion, 1951, 303 N.Y. 653, 101 N.E.2d 763.

■ Although on trial it was the contention of the prosecution that petitioner had caused the death of the deceased while engaged in committing the independent felony of rape or attempted rape and was therefore guilty of "felony murder" N.Y. Penal Law, §§ 1044(2), 2010(2), 260, the trial judge submitted the case to the jury upon instructions that:

The jury's verdict "may be any one of six different forms, namely:

"(1) Guilty of Murder in the first degree.

"(2) Guilty of Murder in the first degree with a recommendation of confinement of

the defendant for the term of his natural life.

"(3) Guilty of Murder in the second degree.

"(4) Guilty of Manslaughter in the first degree.

"(5) Not guilty by reason of insanity.

"(6) Not guilty." (folios 2974-75).

The trial judge did not charge common law murder in the first degree, i. e. an unlawful killing, with a premeditated and deliberate design to effect the death of the deceased, but the failure to do so resulted in a charge more favorable to the defendant than he was entitled to receive and the New York Court of Appeals by affirming the conviction in effect held that the charge met the requirements of local law. The charge, read as a whole, submitted all factual issues to the jury and accorded the petitioner his federal constitutional rights.

I come now to consider the constitutional questions which the New York Court of Appeals certified to the Supreme Court were presented and necessarily passed upon on appeal by that court. I enter upon this consideration "deeply mindful of the responsibilities of the States for the enforcement of criminal laws, and exercise with due humility our merely negative function in subjecting convictions from state courts to the very narrow scrutiny which the Due Process Clause of the Fourteenth Amendment authorizes." Malinski v. People of State of New York, 324 U.S. 401, 418, 65 S.Ct. 781, 789, 89 L.Ed. 1029.

(1) Whether the prosecutor, in violation of defendant's constitutional rights against self-incrimination, had implied in his summation that defendant's refusal to submit to a truth serum test was evidence of his guilt.

The record shows that prior to trial petitioner by order of the County Court of Monroe County was committed to Rochester State Hospital for mental observation, pursuant to Section 870, New York Code of Criminal Procedure (folio 437); that he remained at that institution from August 1st to September 16, 1949 (folio 163); that while at that institution he was examined by Dr. Harold Feldman and Dr. Donald J. McIntosh, physicians and psychiatrists attached to the staff (folios 200, 242); and that they reported to the court that the petitioner on September 16, 1949 "is not at this time in such a state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him or the proceedings or of making his defense" (folio 437). The record also shows that thereafter upon application of petitioner's attorney, a hearing was held by the County judge pursuant to Section 662-a of the New York Code of Criminal Procedure and opportunity afforded the petitioner to controvert the findings of the psychiatrists; testimony was taken and the county judge sustained the findings of the report (folios 264-265).

The record also shows that on the trial the sanity of petitioner at the time of the commission of the crime was put in issue by petitioner's plea of not guilty, People v. Joyce, 233 N.Y. 61, 134 N.E. 836, and sharply contested. It was submitted to the jury with fair, adequate and appropriate instructions.

At the trial Dr. Feldman, a psychiatrist, was called as a witness by the petitioner (Trial Record, folio 1734). He testified that petitioner had been at Rochester State Hospital from August 1, 1949 to September 16, 1949, where he had been committed for mental examination and for opinion as to his sanity. Dr. Feldman testified that he had examined petitioner and that his diagnosis of the latter's mental condition on admission was "acute hallucinosis and alcoholic psychosis" (folio 1743), but that while a patient "the symptoms had disappeared after he had been in the hospital for about a week." (folio 1833-34).

Prior to calling Dr. Feldman as a witness the petitioner's counsel had offered in evidence the records of the Rochester State Hospital pertaining to the petitioner and they had been received as defendant's exhibit D (folio 1659). There appears in these in the clinical notes dated September 13, 1949 the following:

"The patient refused to cooperate in having sodium amytol treatment; demanded to see his lawyer."

Following the introduction of these records in evidence, petitioner's counsel elicited from Dr. Feldman testimony that

"When I questioned him (petitioner) at the hospital he claimed that he could not remember what had happened during these hours when the deceased had been assaulted." (folio 1826)

In substance, Dr. Feldman testified petitioner claimed to have been suffering from amnesia and that he (the doctor) was certain that the petitioner was not malingering. (folio 1870)

■ Cross-examination of this witness by the prosecution as to this claim of petitioner, with respect to his refusal to submit to sodium amytol treatment and matters otherwise stated in the hospital records which petitioner had introduced in evidence was properly allowed within the discretion of the trial judge. This is particularly so since this line of interrogation was conducted without objection by petitioner's trial counsel. (folios 1886–88, 1957). "A claim of denial of due process can hardly be predicated upon the failure of a defense move", United States ex rel. Smith v. Baldi, 1953, 344 U.S. 561, 568, 73 S.Ct. 391, 395; certainly such a claim may not be predicated upon the affirmative act of the defense.

■ In his summation the district attorney made comment on the refusal of the petitioner to submit to this sodium amytol treatment (folios 2814–15); at the time, no objection was made by petitioner's counsel and at the close of the summation for the prosecution, although lengthy objections to it were made, nothing was said concerning this remark.

I cannot say on this record that this comment viewed in the light of the record "shocks the conscience" Rochin v. People of California, 1952, 342 U.S. 165, 172, 72 S. Ct. 205, 209, 96 L.Ed. 183, or that the conviction was brought about "by methods that offend 'a sense of justice'" Rochin v. People of California, 342 U.S. at page 173, 72 S.Ct. at page 210, or "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." Malinski v. New York, supra, 342 U.S. at page 417, 65 S. Ct. at page 789.

But, above all else, it is undisputed that neither sodium amytol nor any other drug or serum was administered to petitioner, while he was either confined in Rochester State Hospital or anywhere else, and no statement under such circumstances was procured from him. Petitioner's protection against self-incrimination was in no way violated.

■ (2) Whether the trial court had improperly stated his determination of a question of fact in the case.—

This contention is based upon a very short remark made by the trial judge in the course of ruling upon petitioner's objections to a hypothetical question put to Dr. Richard Jaenike, a psychiatrist called by the prosecution as an expert to give testimony as to his opinion of petitioner's sanity at the time of the commission of the crime charged. The question propounded by the district attorney, as required by local rule, embodied a recital of the evidence and is set forth in folios 2265 to 2296 of the trial record. It is, as usual, lengthy and verbose, and on this trial there was no exception to what customarily follows the asking of such a question; petitioner's counsel stated he desired "to make some objections concerning some of the facts in the hypothetical question" (folio 2298), and thereafter made a number of objections. In the course of ruling upon one of these, the trial judge said:

"I think it would be better Mr. Henry (the district attorney) if you corrected that particular sentence in the hypothetical question, to state that he intended to commit rape upon her person rather than as you stated it that he committed rape upon her person, and I think that is perhaps in conformity with the proof." (folios 2305, 2304).

Petitioner's counsel after some discussion (his recollection of what the court had said being erroneous) took exception "to the statement of the court that intended rape is in conformity with the proof." (folio 2312). Thereupon, the trial judge said, all this in presence of the jury:

"I don't recollect of having definitely made that statement but if I did I still say, as I have already stated, that that's a question of fact to be determined solely by this jury as one of the questions of fact in this case. We are not guided by any expressed opinion by the Court. They will be bound solely by the evidence presented during the course of this trial and especially on that question." (folio 2313)

The trial judge in his charge also advised the jury that from his rulings on the admission of evidence and his questions

"The jury is not to gather * * * that the Court is attempting to express any opinion as to the guilt or innocence of this defendant. For it is the opinion of the jury on the subject of the guilt or innocence of this defendant, and not the opinion of the Court, which is important, you, as jurors, being the sole and exclusive judges of the facts. The Court is not here to pass upon any facts; has no right to do so; and you must not guess or speculate, or in any way consider his action in passing upon questions of law to mean that he feels or believes one way or another as to a matter of fact." (folios 2913–14)

And, later, he instructed the jury:

"It is your duty to determine the existence or non-existence of the facts in this case, and to decide what inferences you are to draw from the facts as you find them to exist.

"Being the sole and exclusive judges of the facts, naturally, you are the sole and exclusive judges of the credibility of the witnesses who appeared before you to give testimony." (folio 2919).

It is clear upon this record that the trial judge did not usurp the prerogatives of the jury as the triers of the facts, nor was there by his remark a denial of due process. There is neither merit nor substance to such a contention.

■ (3) Whether the prosecutor had improperly advised the jury to find the defendant guilty even if he were insane:

It appears that in the summation of the district attorney he said:

"* * * if you from these facts, and I submit that you must, that this defendant was engaged in an endeavor to commit the crime of rape upon the person of this old lady, then you must under your oath return a verdict in accordance with that finding. If you are satisfied from the evidence to that extent, don't be misled by any idea that you may escape what you deem an unpleasant duty and return a verdict of not guilty by reason of insanity, with any reasonable expectation that this defendant will then be confined permanently in any hospital. Our psychiatrists have differed here, and psychiatrists may differ at a hospital, with the result that he is released." (folios 2866–67)

After the summation, petitioner's counsel objected to the "District Attorney's comments on the punishment or institutionalization that would follow upon a finding of not guilty by reason of insanity." (folio 2885). The judge thereupon ruled

"That is a matter with which this jury has absolutely no concern in the event they should in this case return a verdict of not guilty due to insanity." (folio 2885)

Later, the court specifically charged the jury

"You have a right to consider and should consider the statements and arguments made by counsel on either side, when they are based upon the evidence, but you should disregard any statements, comments or arguments which are not supported by evidence." (folio 2914)

And,

"* * * you must not be swayed by either prejudice or sympathy in the consideration of the evidence in this case in arriving at a verdict." (folio 2916)

And, further

"Both the defendant in this case and the People of the State of New York are entitled to a fair and impartial trial, which means a legal trial on the

evidence and under the law, a trial devoid of sympathy and prejudice." (folio 291)

While the statements of the prosecutor may not be approved, I cannot say, when weighed in the light of the court's instructions to the jury, that they were so inflammatory, unfair or prejudicial as to constitute a denial of due process.

Much was said and urged on behalf of petitioner, on the trial and on appeal as to petitioner's sanity at the time of the commission of the crime for which he was convicted. As to petitioner's mental condition at the time of trial, it appears that "the, issue of petitioner's sanity was heard by the trial court. Psychiatrists testified. That suffices." United States ex rel. Smith v. Baldi, supra, 344 U.S. at page 68, 73 S.Ct. at page 395. Petitioner's sanity at the time of the commission of the crime charged was submitted to the jury. The law of New York provides full protection to an accused; in its application due process was fully accorded the petitioner herein. "The ideal of fair procedure was self-imposed by New York long before it was imposed upon her. New York's Constitution has enjoined observance of due process of law at least since 1821 * * *." Stein v. People of State of New York, 73 S.Ct. 1077.

I find that this petition is devoid of merit and I decline to issue a certificate of probable cause herein. Sec. 2253, 28 U.S.C.A. Petition for writ of habeas corpus is denied.