STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. RAYMOND GEORGE, PLAINTIFF IN ERROR.

Argued October 29, 1931—Decided February 1, 1932.

For the plaintiff in error, *James P. Dolan* and *Thomas Tumulty*.

For the defendant in error, *John Drewen*.

The opinion of the court was delivered by

Bodine, J. Raymond George, a lad nineteen years of age, was convicted of murder in the first degree. He and two companions, on the evening of December 12th, 1930, having stolen an automobile in New York City, were on their way to commit a robbery in Walmuth's store in Newark. A police alarm had been sent out in Jersey City to apprehend a man wanted in Bayonne. Edward Ruark, a Jersey City motor-cycle officer, observed George driving in a car without a license at Communipaw and Westside avenues. Concluding that he might be the man wanted in Bayonne, he gave chase. George finally turned into a dead end street and thus trapped was ordered by Ruark to show his license. Instead, he leaped from his car, drew a 45-calibre pistol and commanded the officer, who was in full uniform, to stick up his hands. Ruark drew back and was making an effort to draw his own gun, when he was shot. The wounded officer was able to fire some shots and to blow his whistle while George and his companions fled. Other officers gave chase and George was soon apprehended. Officer Ruark, in a dying declaration described the shooting and George signed a confession describing his crime and the circumstances leading up to it.

The facts relating to the shooting and flight are not disputed, the defense interposed being insanity. There happens also to be no dispute that some years before George had been committed to an insane asylum for some mental trouble.

The exclusion of a certified copy of defendant's commitment to the insane asylum was not harmful error, in view of all the evidence in the case. "The fact that a person has been adjudicated a lunatic does not mean that he is exempt from prosecution for the commission of a crime. Insane persons may be adjudicated insane and be committed for the protection of the public against violence, or for the care and

cure of the person committed, or for the conservation and management of the lunatic's property. A regular inquisition is not conclusive. In cases of confinement, where the confinement is made for the protection of the public or for the care of the individual, the commitment is evidential of nothing more than a condition justifying the confinement. A commitment adjudges no more than that it is necessary to confine the patient for the good of the public or himself, or both. The fact that a person has been committed as insane has no necessary relation to the question whether such a person can intelligently go to trial for a crime. Persons having some forms of insanity are as responsible for crimes committed by them as normal persons." *State* v. *Noel,* 102 *N. J. L.* 659, 671.

The learned trial judge in submitting the issue raised by the plea of insanity to the jury did so in almost the precise language of Chancellor Runyon in *Graves* v. *State, 45 N. J. L.* 347, 359, 360. In this there was no error. The chancellor said in that case: "Nor was there any error in the refusal of the court to charge as requested by the prisoner's counsel on the subject of insanity. They had charged that the burden of proof of the alleged insanity was on the accused; that the law presumes that every man is sane until the contrary be proved, and that therefore, when an accused sets up the defense of insanity, the burden of proof is upon him, and that to make effectual such a defense, the proof of the prisoner's insanity must be satisfactory, and that the accused must overcome the legal presumption of sanity by a clear preponderance of proof and by the most satisfactory evidence. * * * The plea of insanity is a defense, and the burden of proving it is on the accused. The law presumes or assumes that at the time of committing the act for which he is tried he was sane, and the state is therefore not called upon to prove that he was so. If he sets up in his defense the plea of insanity, it is incumbent on him to establish it. and if he fails to do so the presumption or assumption of sanity still stands; for it has not been overcome or shown to be false. * * * If the burden of proving the defense

[of insanity] is on the accused, as it undoubtedly is, it follows that he is not entitled to the benefit of the plea unless he establishes it. While, for obvious reasons, the defense of insanity is not disfavored by the law, yet in view of its peculiar character, and in order that it may not serve as a screen for guilt, it is regarded with jealousy, and in the interest of public justice, and in accordance with the sound dictates of a wise and necessary public policy, it is subjected to a close and careful scrutiny. The defense must be proved to the satisfaction of the jury, and it may be established by the preponderance of proof; in other words, it must be sustained by the evidence." See, also, *State* v. *Overton,* 85 *N. J. L.* 287, 294.

The defense called two medical experts to show insanity. They testified discursively on low mentality and impulse. The state in rebuttal called a number of physicians, who testified respecting the defendant's sanity. The test of insanity laid down in *State* v. *Spencer,* 21 *N. J. L.* 196, was reaffirmed as recently as *State* v. *Noel,* 102 *Id.* 659, 676, and the doctrine of so-called irresistible impulse was repudiated by the present Chief Justice in the case of *State* v. *Carrigan,* 93 *Id.* 268; *affirmed,* 94 *Id.* 566. Mental irresponsibility, because proper judgment was not exercised, is not only not the test of legal insanity approved by our courts, but seems to us to include immunity for nearly all criminal acts of omission and commission. The very nature of the proofs as to insanity in this case made it necessary for the trial judge to submit the issue raised to the jury in the way in which he did.

The charge examined in the manner required under the rule laid down in *State* v. *Sage,* 99 *N. J. L.* 229, seems faultless. The trial judge charged the jury in part as follows: "You will have to decide the issue raised by the medical testimony in this case as you will have to decide each and every other issue presented to you by the case. It simply comes down to a question of this: which set of doctors do you believe? * * * Did the defendant know that he was being chased by a police officer? Was he in fear of being arrested by this police officer? Did he shoot the police officer

to escape arrest? If you believe this contention then manifestly the defendant could distinguish between right and wrong and must be held legally responsible for this killing."

But he also instructed the jury to consider the acts of defendant before and after the shooting, and charged them as follows:

"If you believe that the defendant was incapable of distinguishing between right and wrong at the time he shot Officer Ruark, then, of course, he was not responsible for this killing and you must find him not guilty. * * * Therefore keep in mind that the hard and fast rule of the State of New Jersey is, not whether the defendant has a completely normal mind, but the test is, was the defendant at the time of committing the crime capable of distinguishing between right and wrong? If he was so able to distinguish, then he is legally responsible for his acts. If he was not capable of so distinguishing, then he is not guilty."

Considering not only these excerpts from the charge, but the charge as a whole, we think the issues raised were correctly submitted to the jury, and also that the trial judge quite properly refused the requests to charge upon which error was assigned.

A regrettable custom seems to have grown up to challenge the action of the trial judge upon many grounds which do not bear close scrutiny. Error was alleged because the trial judge charged the jury in the manner referred to; and error was also assigned because he did not charge as follows: "The test of responsibility is the capacity of the defendant at the time of the doing of the act complained of to distinguish between right and wrong with respect to that act, and if the defendant was so insane that he could not distinguish between right and wrong as to the particular act in question, he should be acquitted." This request was, as before noted, substantially charged. Yet the charging of it, as well as the failure so to do, are both assigned as error. Inconsistent assignments of error are not helpful.

We cannot, in view of the proofs and the confession, see in what manner the defendant was prejudiced by the testi-

mony of Officer Varley, that the occupants of the car in which defendant was fleeing from the scene of his crime observed that they were being pursued. The defendant admitted in his confession that this was so. Further, there is no more merit in an objection to the testimony of Officer Waldron, who was in pursuit, as to the speed the cars were being driven by the pursued and the pursuers.

Error is assigned because the court denied a motion in arrest of judgment. The basis of the motion was that it appeared that the defendant was insane. Such condition is not shown by the record. Indeed the jury found otherwise.

"As a general rule a motion in arrest of judgment can be based only upon errors which appear on the face of the record, or upon those matters which should but do not appear on the record. Subject to the latter limitation, it cannot be based on errors not appearing in the record; nor can it be supported by an affidavit of facts outside and constituting no part of the record." 16 *Corp. Jur.* 1251. This also is the rule in New Jersey.

Judgment can be arrested only for some cause appearing on the record. *Powe* v. *State,* 48 *N. J. L.* 34. "That motion must be determined solely by the record, using the term in its proper sense. So employed, it imports the history of only those proceedings which take place in the orderly progress of a cause, and which the common law or statutes require to be perpetuated." *State* v. *Crusius et al.,* 57 *Id.* 279, 280. "It does not include a history of the proceedings at the trial, except the general statement that a jury was impaneled; that evidence was submitted by both parties; that thereafter the arguments of the respective counsel were heard; that the issue, after a charge by the court, was submitted to the jury; that the jury rendered its verdict, either acquitting or convicting the defendant of the crime charged against him in the indictment; and that, in case of a verdict of guilty, the court thereupon pronounced sentence." *State* v. *Landecker,* 100 *N. J. L.* 195. See, also, *State* v. *Bove,* 98 *Id.* 350; *affirmed, Ibid.* 576.

.. The record discloses that the defense of insanity was interposed and that the jury resolved the question so submitted against the contention of the defendant. Such circumstance does not justify the motion in arrest of judgment, or make its refusal error.

The verdict was clearly not against the weight of the evidence. The proofs established a willful, deliberate and premeditated murder, brutally executed by a person, as the jury found, capable of distinguishing between right and wrong.

There being no merit in any of the other matters presented, the judgment below is affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 14.

*For reversal*—None.