**Robert F. URBANO, Petitioner,**

v.

**STATE OF NEW JERSEY, Respondent.**

**Civ. A. No. 902–63.**

United States District Court
D. New Jersey.

Jan. 13, 1964.

Robert F. Urbano, pro se.

Guy W. Calissi, Hackensack, N. J., for respondent.

WORTENDYKE, District Judge.

There is before this Court a written petition filed October 28, 1963 for a writ of habeas corpus. Upon representation of indigency, leave was granted to the petitioner to file his petition and accompanying documents without prepayment of fee and to proceed thereon in forma pauperis. Respondent, The State of New Jersey, has filed answer to the petition.

In his verified petition the applicant alleges that he was convicted of murder in the Bergen County (New Jersey) Superior Court and sentenced on May 19, 1960 to life imprisonment in the New Jersey State Prison at Trenton where he is presently confined.

Annexed to the petition are copies of the complaint against the petitioner; the warrant for his arrest; the indictment returned by the Bergen County Grand Jury charging the petitioner with the murder of one Louis Leo Zaritsky on January 15, 1960 in the Borough of Paramus in that County, in violation of §§ 2A:113–1 and 2 of the statutes of that State; the order of the Bergen County Court assigning as counsel to the petitioner David A. Gelber, Esq. and James L. Montgomery, Esq., members of the Bar of New Jersey; the order of the Honorable Arthur O'Dea, Judge of the Bergen County Court, dated May 19, 1960, imposing sentence of life imprisonment upon petitioner upon his plea of non vult, and transcript of the sentencing proceedings; letter from one of the assigned attorneys for the petitioner to the Warden of the New Jersey State Prison, dated June 29, 1960, advising that petitioner was subject to a strong suicidal tendency and suggesting that he be seen by the prison doctor; order of the Warden of the New Jersey State Prison dated August 4, 1960, directing the transfer of petitioner from the State Prison to the custody of the Chief Executive Officer of the State Hospital at Trenton; petitioner's similar application to the Bergen County Court dated April 1, 1963 for writ of habeas corpus; order of that Court dated April 25, 1963 denying the writ; order of the Supreme Court of New Jersey dated July 1, 1963 denying petitioner's application for leave to appeal as an indigent from the Bergen County Court's denial of his application for writ of habeas corpus; further order of the Supreme Court of New Jersey, dated September 30, 1963, dismissing petitioner's appeal for want of merit; and letter from petitioner to the Chief Justice of the New Jersey Supreme Court, dated August 10, 1963, requesting inquiry into State proceedings involving petitioner to the date thereof.

With his petition to this Court the applicant has filed a complete transcript of a hearing held by the Judge of the Bergen County Court on April 25 and 26, 1960, pursuant to N.J.S. 2A:163–2, N.J.S.A., for the purpose of determining petitioner's mental capacity to stand trial and cooperate with counsel in his defense. At that hearing six qualified expert witnesses testified respecting the subject of inquiry, and upon this testimony the Judge of the Bergen County Court, on April 27, 1960, found and determined that petitioner was competent and capable of standing trial upon the indictment; that although he suffered from mental illness such illness was not an impediment to his conferring with counsel and relating the factual circumstances and details necessary for his proper defense; and that he comprehended, understood and appreciated his then existing situation, and was able to collaborate and cooperate with counsel in his defense to the charge set forth in the indictment. Annexed to the transcript of the testimony of the expert witnesses who testified before the Court upon the sanity hearing are copies of the psychiatric and psychological reports on petitioner of Noel C. Galen, M.D., Daniel Goldstein, M.D., Fredric Wertham, M. D., Emanuel Fisher, Ph.D., Laurence M. Collins, M.D., J. F. Zigarelli, M.D., Stanley Liutkus, Ph.D., Charles F. Post, M.D. Also made part of said appendix is a

copy of petitioner's application of July 8, 1963 to the New Jersey Supreme Court to obtain documentary evidence which is, in part, identical to the application he has made here for the same documents, and a copy of a list of names of visitors received by petitioner during his confinement in the Bergen County Jail, with accompanying letter from the Sheriff of said County dated May 24, 1963, and a letter from the Undersheriff to petitioner, dated June 11, 1963, advising that if petitioner desired any further information the records of his office were open to the inspection of petitioner's attorney at any reasonable time during any week-day.

It further appears from the transcript filed with the pending petition that, following the determination of the Bergen County Court that the petitioner was competent to stand trial and able to collaborate and cooperate with counsel in his defense, the trial of the indictment against him was duly moved. Thereupon counsel for the petitioner, in his behalf and in his presence, asked leave of the Court to retract his plea of not guilty and to tender a plea of non vult. The record discloses that thereupon the following colloquy between the Court and the defendant occurred:

"THE COURT: Urbano, do you understand what Mr. Gelber [of counsel with petitioner] has just represented to the Court on your behalf?

"THE DEFENDANT: Yes.

"THE COURT: Have you discussed the matter of offering a plea of non vult to the indictment with Mr. Gelber and Mr. Montgomery?

"THE DEFENDANT: Yes, sir.

"THE COURT: How many times have you conferred with them on that matter of the offer of a plea?

"THE DEFENDANT: I don't know.

"THE COURT: When did you first discuss it with them? Let me say this, anything you say to me or say to the Court in open court here now is without prejudice to you in any way in the event we do not accept the plea.

"THE DEFENDANT: I just don't know.

"THE COURT: When did you last discuss this with them?

"THE DEFENDANT: Just now.

"THE COURT: Did you discuss it prior to just now?

"THE DEFENDANT: Yes.

"THE COURT: When was that, do you know?

"THE DEFENDANT: I don't remember.

"THE COURT: Was that discussion at your request or at their request?

"THE DEFENDANT: At their request.

"THE COURT: Did you ever make that request yourself to them?

"THE DEFENDANT: I don't think so.

"THE COURT: You didn't send for them last week to discuss the matter of a plea to the indictment?

"THE DEFENDANT: I might have. I don't remember.

"THE COURT: You might have?

"THE DEFENDANT: Yes.

"THE COURT: But did you discuss it with them last week in the jail?

"THE DEFENDANT: Yes, I did.

"THE COURT: And did you discuss it with Dr. Werthem in the jail?

"THE DEFENDANT: Yes.

"THE COURT: Well, what I would like to know, if I can find out from you, is who initiated those discussions? Who prompted them, you or your counsel?

"THE DEFENDANT: I don't think anyone did.

"THE COURT: I don't hear you.

"THE DEFENDANT: I think it just came up as an alternate.

"THE COURT: It just came up as an alternate?

"THE DEFENDANT: Yes.

"THE COURT: Now, do you know and understand the meaning and the consequences of pleading guilty to this indictment?

"THE DEFENDANT: Yes.

"THE COURT: Do you understand and know that by offering a plea of non vult to the indictment you are admitting your guilt?

"THE DEFENDANT: Yes.

"THE COURT: You are admitting that you murdered the decedent?

"THE DEFENDANT: Yes.

"THE COURT: And do you know that by pleading non vult that if the Court accepts such a plea you are submitting yourself to the sentence of the Court, whatever that might be?

"THE DEFENDANT: Yes.

"THE COURT: And that the sentence may be life imprisonment?

"THE DEFENDANT: Yes.

"THE COURT: Have you given consideration to that? Have you thought about it?

"THE DEFENDANT: Yes, yes.

"THE COURT: Have you given consideration to the fact if you don't plead non vult to the indictment and go through with your trial which we are ready to give you now, that you may be found not guilty or you may be found guilty of murder in the first degree without a recommendation?

"THE DEFENDANT: Yes.

"THE COURT: Do you know the consequences of that, such a finding by the jury?

"THE DEFENDANT: Yes, yes.

"The COURT: In other words, if they found you guilty of murder in the first degree for a robbery murder, murder committed during the course of a robbery, that the penalty is death?

"THE DEFENDANT: That I don't care.

"THE COURT: You don't know that?

"THE DEFENDANT: I said I don't care.

"THE COURT: You know it, though, don't you?

"THE DEFENDANT: Yes, sir.

"THE COURT: If it is murder in the first degree with a recommendation of life imprisonment that you would get a sentence of life imprisonment?

"THE DEFENDANT: Yes.

"THE COURT: And if the jury finds you guilty of murder in the second degree that you could be sentenced for life, do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: And if the jury finds you not guilty of the charge of the indictment, you would be acquitted and you would be a free man. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Now, have all these things been discussed with you by Mr. Gelber and Mr. Montgomery?

"THE DEFENDANT: Yes. I just don't want a trial.

"THE COURT: I beg your pardon?

"THE DEFENDANT: I said I just don't want a trial.

"THE COURT: You have given consideration to all of these phases of your case?

"THE DEFENDANT: Yes. I just don't want a public trial.

(The defendant sits down and cries.)

"THE DEFENDANT: Excuse me.

"THE COURT: Has there been any promise or threat made to you

in respect to your pleading in this case?

"THE DEFENDANT: No.

"THE COURT: We will take a short recess and have him pull himself together.

(At this time a short recess was taken.)

(After recess.)

"THE COURT: I want to make a correction, Urbano, in what I said about the sentence in the event that the jury should find you guilty of murder in the second degree. I said life. That is not so.

"In the event the jury found you guilty of murder in the second degree the sentence would be not more than thirty years. Do you understand that, that correction?

"THE DEFENDANT: Yes, sir.

"THE COURT: And you realize if you go to trial on this case and the jury should find you not guilty, that you would be a free man insofar as this charge is concerned?

"THE DEFENDANT: Yes.

"THE COURT: And nobody has in any way threatened you or intimidated you in any way to plead to this indictment, to plead non vult?

"THE DEFENDANT: No.

"THE COURT: And your offer of a plea to this indictment is of your own free will?

"THE DEFENDANT: Yes.

"THE COURT: And you have taken it into consideration and mulled it over in your own mind?

"THE DEFENDANT: Yes.

"THE COURT: And you considered all the angles?

"THE DEFENDANT: I think so, yes.

"THE COURT: What the various results of the trial might be?

"THE DEFENDANT: Yes. I just don't want a trial.

"THE COURT: And if the Court accepts the plea of non vult

the sentence most probably will be life imprisonment, imprisonment for the rest of your natural life, have you taken that into consideration?

"THE DEFENDANT: Yes.

"THE COURT: And in the face of all these facts that we have discussed and you and I have discussed here this morning, are you still thoroughly satisfied that you, yourself, of your own free will, desire to plead non vult to the indictment?

"THE DEFENDANT: Yes.

"THE COURT: And submit yourself to the sentence of the Court under that indictment, whatever that might be—probably life imprisonment?

"THE DEFENDANT: Yes.

"THE COURT: And to give up a trial by a jury?

"THE DEFENDANT: Yes.

"THE COURT: Have counsel anything further to say?

"MR. GELBER: No, sir, excepting I would like to say that I would like to have the matter disposed of today and ask sentence be imposed at this time.

"THE COURT: Does the State have anything to say?

"MR. GALDA: No, your Honor.

"THE COURT: Is there anyone else that you would like to confer with before we make the decision in this case, Urbano?

"THE DEFENDANT: No.

"THE COURT: Well, under the circumstances of this case and in view of the testimony which we heard from the psychiatrists who testified on the hearing in respect to the capacity and competency of the defendant to stand trial, all of which would be admissible and heard by a trial jury on the issue of whether or not the trial jury would recommend life imprisonment in the event they find a verdict of murder in the first degree, and because the Court is satisfied, after hearing the testi-

mony of the psychiatrists in this day and a half of hearing that we have just gone through, that such testimony would probably persuade the trial jury in the event they found a verdict of murder in the first degree to recommend life imprisonment; and because the Court is satisfied that that would be the result of such testimony and any additional testimony as to the background and surroundings of the defendant with respect to his way of life and his attitude toward life and his culpability in this case on the question of sentencing, that taking all that into consideration a jury would most probably be unanimously persuaded in the finding of a verdict of murder in the first degree to recommend life imprisonment.

"And since the defendant thoroughly understands his situation and his plight and desires to enter a plea of non vult to the indictment for murder with full knowledge that such a plea, if accepted, would probably result in a sentence of life imprisonment, which would be the same end result in the event a jury found a verdict of murder in the first degree with a recommendation, the Court under all those circumstances will allow the retraction and accept the plea of non vult to the indictment * * *."

The record before me further discloses that on May 19, 1960 the State moved sentence of the petitioner. He was given an opportunity to speak in his own behalf, but refused to avail himself thereof. His counsel addressed the Court in his behalf. Thereafter the Court sentenced petitioner to "imprisonment in the New Jersey State Prison for the term of his natural life, with credit,—if there is to be given credit at any time in consideration of parole— for the time that he had served in the Bergen County Jail awaiting trial and sentence."

The petitioner represents that he was received at the New Jersey State Prison on May 24, 1960, and was hospitalized during the first week of July 1960 for gastro-intestinal and other somatic analyses, which proved negative. He says that during his confinement in the hospital he was under twenty-four hour observation in view of his psychosis and an attempt at suicide. He says that, with a tentative neuropsychiatric diagnosis of schizophrenic reaction and strong suicidal tendencies, he was transferred to the New Jersey State Hospital on August 1, 1960, where he received electro-shock and other therapy; but that, upon remission of his symptoms, he was discharged from the State Hospital, and remanded to the State Prison on November 28, 1960, with a final diagnosis of schizophrenic reaction, paranoid type.

Petitioner says that he applied to the Bergen County Court on April 1, 1963 for a writ of habeas corpus, which was denied on April 25, 1963, without a hearing. His appeal from that denial to the New Jersey Supreme Court was dismissed for want of merit. He alleges that he has exhausted available State remedies, according to the criterion of Fay v. Noia, 1963, 372 U.S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837, and bases his present application upon the following contentions, viz.: (1) the sanity hearing accorded to him in April, 1960 established the existence of a psychosis at the time of the crime and of the trial, which fact was confirmed on his admission to the State Hospital; (2) the evidence at the sanity hearing demonstrated that he was not competent to plead or to stand trial; (3) evidence of ability to confer with counsel was misstated by the court at the sanity hearing, and the record discloses evidence of mental coercion and collusion; (4) the action of the court in the sanity hearing was arbitrary, erratic, partisan and prejudicial to the defendant; (5) the trial court abused its discretion and committed numerous procedural errors which cumulatively constituted a denial of due process; (6) as a result of the foregoing, petitioner's constitutional rights have been violated whereby the trial court

lost jurisdiction, and the conviction became null and void. In sum, petitioner contends that the finding by the court that petitioner was competent to stand trial was not supported by and was contrary to the evidence adduced at the hearing and that the court's conduct of the hearing was erroneous, arbitrary, prejudicial and an abuse of discretion, thereby causing the hearing and the finding of competency to be unfair and a denial of due process under the Fourteenth Amendment.

 Where a state prisoner raises the question of his mental competence to stand trial or his sanity at the time of the offense, the due process clause of the Fourteenth Amendment does not compel the state to employ any particular legal standard either of sanity at the time of the offense, Leland v. Oregon, 1952, 343 U.S. 790, 800–801, 72 S.Ct. 1002, 96 L. Ed. 1302, or of competence to stand trial, Thomas v. Cunningham, 4 Cir. 1963, 313 F.2d 934, 938. Cf. United States v. Currens, 3 Cir. 1961, 290 F.2d 751, 767–771. The New Jersey standard for competence to stand trial is set forth in Aponte v. State, 1959, 30 N.J. 441, 450, 153 A.2d 665, 669:

> "As a test of ability to stand trial on a criminal charge, insanity means a mental illness or condition which prevents the accused from comprehending his position and from consulting intelligently with counsel in the preparation of his defense." [1]

N.J.S. 2A:163–2, N.J.S.A. provides for a hearing, with or without a jury in the judge's discretion, on the sanity of an accused at the time of the hearing, and this opportunity to present the defense of incompetence to stand trial is in accord with the requirements of due process, United States ex rel. Smith v. Baldi, 3 Cir. 1951, 192 F.2d 540, 544, affd. 1953, 344 U.S. 561, 73 S.Ct. 391, 97 L. Ed. 549. Since petitioner was accorded a hearing on his competence to stand trial pursuant to this statute, the only constitutional question raised by the present petition is whether the conduct of the hearing and the finding by the court were in accord with due process. The test of whether the hearing constituted a denial of due process is whether it caused a denial of that fundamental fairness essential to the very concept of justice, Crooker v. California, 1958, 357 U.S. 433, 439, 78 S.Ct. 1287, 2 L.Ed.2d 1448; Lisenba v. People of State of California, 1941, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166; Chavez v. Dickson, 9 Cir. 1960, 280 F.2d 727, 735. Mere errors or mistakes of law in the conduct of a trial or hearing may not be reviewed by a Federal court on a state prisoner's petition for habeas corpus unless they constitute such a denial of fundamental fairness. United States ex rel. Birch v. Fay, D.C.N.Y.1961, 190 F.Supp. 105. See United States ex rel. Saunders v. Myers, 3 Cir. 1960, 276 F.2d 790.

With reference to the petitioner's present attack on the sanity hearing, the specific standard which this court must apply to determine if due process has been denied is whether it is satisfied, by the record, that the state process has given fair consideration to the issues and the offered evidence and has resulted in a satisfactory conclusion. Brown v. Allen, 1953, 344 U.S. 443, 463, 73 S.Ct. 397, 97 L.Ed. 469; United States ex rel. Smith v. Baldi, 1953, 344 U.S. 561, 568, 570, 73 S.Ct. 391, 97 L.Ed. 549. See also Thompson v. City of Louisville, 1960, 362 U.S. 199, 206, 80 S.Ct. 624, 4 L.Ed.2d 654.

██ Before proceeding to apply this standard to the present petition, there is the question of whether or not this court should conduct its own hearing on the facts which form the basis for petitioner's claim of a denial of due process. In Townsend v. Sain, 1963, 372 U.S. 293,

1. See also Lindman and McIntyre, The Mentally Disabled and the Law (Univ. of Chicago 1961) pp. 357–358; Weihofen, Mental Disorder as a Criminal Defense (Dennis & Co. 1954), p. 431.

Compare the standard for insanity at the time of the offense, State v. Lucas, 1959, 30 N.J. 37, 152 A.2d 50; Biggs, The Guilty Mind (Harcourt Brace 1955).

313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770, the Supreme Court directs that " * * a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." In amplification of these criteria the opinion in Townsend points out, (372 U.S. at pp. 316–317, 83 S.Ct. at pp. 758–759, 9 L.Ed.2d 770) that "state factual determinations not fairly supported by the record cannot be conclusive of federal rights." The District Court is further directed that "If the state trial judge has made serious procedural errors (respecting the claim pressed in federal habeas) in such things as the burden of proof," and "Even where the procedure employed does not violate the Constitution, if it appears to be seriously inadequate for the ascertainment of the truth, it is the federal judge's duty to disregard the state findings and take evidence anew." The Court requires an evidentiary hearing where newly discovered evidence is alleged in the habeas application if such evidence could not reasonably have been presented to the state trier of the facts; especially "If for any reason not attributable to the inexcusable neglect of petitioner * * * evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing, * * *." With respect to the final criterion the cited opinion has this to say: "(6) Our final category is intentionally open-ended because we cannot here anticipate all the situations wherein a hearing is demanded. It is the prov-ince of the district judges first to determine such necessities in accordance with the general rules. The duty to try the facts anew exists in every case in which the state court has not after a full hearing reliably found the relevant facts." We proceed to analyze the documents submitted by the petitioner in the light of the foregoing directives.

The principal factual issue which the petitioner presents to this Court, and which could be resolved by this Court upon an evidentiary hearing, is the question of whether or not petitioner was, on April 27, 1960, competent to retract his plea of not guilty and to proffer a plea of non vult. The merits of that factual dispute were resolved by the Bergen County Court after a plenary hearing supported by substantial evidence. It would be an act of supererogation for this Court to summarize the transcript of the testimony of the expert witnesses who testified before the Bergen County Court pursuant to the New Jersey statute. The state court, on petitioner's habeas corpus application to it, has already reviewed that testimony in a written opinion which is part of the record submitted by the petitioner to this Court, including the written reports of examination and statements of opinion of each of the expert witnesses furnished respectively to the County Prosecutor and to counsel for the petitioner. In the findings of fact and conclusions of law, at the sanity hearing, the court summarizes the testimony of the witnesses respecting the history obtained by them from the petitioner. That history discloses that petitioner "has lived an unusual and lately a strange life", growing up with a good family and attending school and pursuing the normal pursuits of a young man in a "staid New England town." It also appears that petitioner attended the University of Illinois. His residence there was interrupted by military service in the United States Air Corps. His service involved bombing missions over Europe as a navigator-bombardier, as a result of which he received commendations and citations.

After separation from the military service, he returned to college and graduated from the University with a degree of B. S. in mining and geology, and was thereafter employed for a period of time in mining activities in the State of Arizona. Petitioner acquired a predilection for residence in Paris, France, where he lived enjoyably but without apparent gainful occupation, periodically returning to the United States. He acquired odd living, social and sex habits, but was intellectually brilliant and able to speak four languages. He manifested an interest in art and interior decoration.

All of the experts upon whose testimony the court based its findings and conclusions were eminently qualified to express opinions respecting petitioner's condition at the time of their examinations and when they testified. Dr. Galen and Dr. Goldstein testified that they diagnosed petitioner's condition as that of chronic paranoid schizophrenia, a disturbance in thinking characterized by grandiose thinking and a feeling that the world is against him. Dr. Wertham testified that he diagnosed petitioner's condition as psychosis with psychopathic personality, with paranoid and suicidal symptoms, manifested by an inability to have any real relationships with other people, a misrepresentation of reality, ideas of persecution and ideas of death and suicide. Dr. Fisher, a psychologist, testified that he found petitioner to be psychotic with specific schizophrenic and paranoid features, which condition had existed from early childhood and which is manifested by an inability to assess appropriately what is going on around him. Doctors Zigarelli and Collins each testified that they diagnosed petitioner, in a joint examination, as a sociopathic personality with emotional instability and homosexual tendencies, characterized by a tendency to grandiosity, but with no actual psychotic behavior. All the doctors, except Dr. Fisher the psychologist, based their diagnoses on extensive interviews with petitioner during which they each obtained a detailed history from him which they summarized in their testimony. Dr. Fisher based his conclusion upon answers given by petitioner to a standard set of three psychological examinations.

■ If this Court were to hold an evidentiary hearing for the purpose of determining petitioner's competency on April 27, 1960 to plead non vult to the indictment against him, it would be necessary to recall the psychiatric witnesses who testified before Judge O'Dea on April 25 and 26, 1960 for direct and cross-examination. It must be assumed in the absence of any basis for inference to the contrary that if these witnesses were recalled their testimony and opinions would be substantially as already given and stated. Even if petitioner might desire to produce the testimony of a psychiatrist who may have examined him *after* the date upon which his plea was accepted, the testimony of such an expert would not be probative of petitioner's condition on the date in question.

■ The petitioner does not make any allegation of newly-discovered evidence. The sanity hearing constituted a full and fair hearing of the material facts which were fully developed. I find that the issue of petitioner's competency to collaborate with counsel in his defense and to stand trial was completely and properly resolved by the Bergen County Court upon substantial evidence supportive of the Court's conclusion that such competency then existed. Consequently, the criteria enunciated in Townsend v. Sain, supra, have been fully met by the disclosures of the record presently before this Court.

Coming then to the merits of petitioner's application, the basic issue is, as noted above, whether the record of the sanity hearing shows that the court gave fair consideration to the issues and the evidence and reached a satisfactory conclusion.

Petitioner's first two contentions are that the evidence at the hearing, subsequently confirmed on his admission to State Hospital, established the existence

of a psychosis at the time of the crime and at the date of the sanity hearing and that he was not competent to stand trial or to plead. He argues that the hospital records for the New Jersey State Prison, under date of August 1, 1960, disclose that a Dr. Weinberg expressed a diagnosis of petitioner's condition as a schizophrenic reaction of undifferentiated type and a manifestation of strong suicidal tendencies. Dr. Weinberg recommended that petitioner be sent to the State Hospital for more intensive observation, study and treatment. In this diagnosis and recommendation, a Dr. Howard M. Weisler concurred, according to the disclosure of the petition. These recommendations were followed. Petitioner, (in his prior habeas corpus application in the State Courts) states that he "is almost totally amnesic for approximately a year prior to consultations in November of 1960, shortly before his discharge from the State Hospital as having remitted." He says that he was informed by Dr. Sydney G. Fine that he had made a most satisfactory recovery from his mental disease from which the doctor said he believed petitioner had suffered for some years previously. This opinion was concurred in, according to petitioner, by Dr. William N. Alexander. Upon the belief of these two physicians that petitioner had suffered a mental disease for some years previous to November 1960, petitioner predicates his contention that "the immediate commitment to the State Hospital following conviction, together with undisputed evidence of insanity at time of trial, is prima facia proof of legal insanity or schizophrenia and irresponsibility at the time of the crime."

■ In Aponte v. State, supra, 30 N.J. 450, 153 A.2d 669, the New Jersey Supreme Court held: "As a test of ability to stand trial on a criminal charge, insanity means a mental illness or condition which prevents the accused from comprehending his position and from consulting intelligently with counsel in the preparation of his defense. * * * N.J.S. 2A:163-2, N.J.S.A.,

* * * provides that if such person [in confinement under indictment] 'shall appear to be insane' the judge 'may, upon presentation to him of the application and certificates as provided in Title 30, Chapter 4,' institute an inquiry as to the mental condition of such person, and try the issue himself or with a jury 'as the judge in his discretion may determine.'" The cited case held, (30 N. J. at p. 451, 153 A.2d at p. 670) that the statutory provision "was not intended to establish a single concept of insanity for the several issues which may be tried," and followed quotations from State v. Noel, E&A 1926, 102 N.J.L. 659, 133 A. 274, that "'[t]he fact that a person has been committed as insane has no necessary relation to the question whether such a person can intelligently go to trial for a crime. Persons having some forms of insanity are as responsible for crimes committed by them as normal persons.'" and from Lyles v. United States, 1957, 103 U.S.App.D.C. 22, 254 F.2d 725, cert. den. 1958, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067, where the Court of Appeals observed: "He [defendant] may have a mental disease, and the mental disease may have been the cause of his criminal act, and he may be suffering from the same disease at the time of his trial; but it is a scientific fact that he nevertheless may be competent to stand trial under this definition of competency. A paranoiac or a pyromaniac may well understand the charges against him and be able to assist in his defense. 'To assist in his defense' of course does not refer to legal questions involved but to such phases of a defense as a defendant usually assists in, such as accounts of the facts, names of witnesses, etc. * * *'" Thus the fact that petitioner was committed to the State Hospital after he pleaded and was sentenced would have no bearing on his competency to stand trial or to plead.

■ The Aponte decision further states, (30 N.J. at p. 455, 153 A.2d at p. 672), that "N.J.S. 2A:163-2 and 3, N.J.S.A., were not intended to permit an accused to by-pass the criminal trial if

he is able to defend, or to entitle him to a trial run of his defense of insanity by the expedient of asserting incapacity to defend. Rather the purpose was to permit a termination of the criminal proceeding *if the accused is unfit for trial.* Nor does the statute require a trial of the defense of insanity at the time of the inquiry into the ability to stand trial. * * * And if the accused is found to be fit for trial, the issue of insanity at the time of the crime should not be adjudged, and if both issues are tried together with a jury, the jury should be so instructed. * * * Hence, a court should not deal with the defense of insanity until after the incapacity of the accused to stand trial has been established, unless from the facts on hand it is virtually certain that incapacity to defend will be found. Rather, it should first try the issue of capacity for trial, and although both by our case law and the statute it may sit with a jury, we think it ordinarily more appropriate that that issue be tried by the court alone. If incapacity is found, then, in its discretion, the court may, alone or with a jury, inquire into the defense of insanity." The Bergen County Court carefully followed the procedural guide lines laid out in the foregoing language and it cannot be fairly charged with having infringed any constitutional right of the petitioner.

Petitioner acknowledged to the examining psychiatrists and psychologist that he had committed the homicide for which he was indicted, that he knew what he had done, that he knew why he was incarcerated and had attorneys to represent him, and was aware that his trial for murder was imminent. All of the psychiatrists also testified that they were able to converse with petitioner and obtain a detailed personal history from him. He had discussed with Dr. Wertham, one of the psychiatrists who testified before the County Court, the possibility of pleading guilty to the indictment. The Court found that, although the psychiatrists who testified varied in their technical labels for petitioner's

mental condition or illness, they all agreed that he was oriented, had a good memory and power of expression and was cognizant of his then present situation.

The Court's findings disclosed that counsel for the petitioner did not testify or report to the Court that they had any difficulty in their attorney-client relationship with petitioner in preparing for his trial. Neither did counsel express anticipation of difficulty during the trial. Petitioner himself did not testify at the hearing. Counsel did not offer him as a witness, nor was any reason or excuse given or made for his failure to be sworn and to testify in his own behalf. The Court concluded that petitioner had the competency and capacity to stand trial, and that the mental illness from which he suffered was no impediment to his ability to confer with counsel and to relate the factual circumstances necessary for his proper defense. The Court found that he comprehended, understood and appreciated his then present situation, and was able to collaborate and cooperate with counsel in defense to the murder indictment against him. In reaching this conclusion, the County Court properly followed the rule in Aponte v. State, 30 N.J. 441, 153 A.2d 665 (1959) and State v. George, E & A 1932, 108 N.J.L. 508, 158 A. 509, and its findings were substantiated by the evidence.

Petitioner's third contention is that the sentencing court in its findings of fact and conclusions of law misstated the evidence produced upon the sanity hearing. He contends that the evidence presented disclosed the existence of mental coercion and collusion and concludes his argument in support of this contention with the allegations that "the 'choice' [of whether to plead non vult or stand upon his plea of not guilty] was not defendant's and certainly not 'a course to make death impossible' in view of his vehement 'death wish'." Petitioner then cites State v. Daniels, 1962, 38 N.J. 242, 183 A.2d 648. That case was an appeal by the State from the action of the County Court permitting the defendant under

a murder indictment to withdraw a plea of non vult and go to trial upon a plea of not guilty. After having been sentenced to life imprisonment upon his plea of non vult, he applied to the County Court for a writ of habeas corpus which was treated by that court as a motion in the original criminal case to withdraw the plea of non vult. The County Court held a full hearing and concluded that the application should be granted and that the defendant should be permitted to stand trial. The defendant had contended before that Court that his assigned counsel had not fully investigated his previous history of mental illness. The County Court concluded that reasonable doubt existed as to the free function of the defendant's mind at the time he consented to plead non vult and resolved that doubt in the defendant's favor. The Supreme Court reversed the order of the County Court. Anent the instant petitioner's present contention that his plea could not have been voluntary because it made death impossible, in view of his asserted "vehement 'death wish,'" the Court in State v. Daniels, supra, had the following to say respecting an analogous situation involved in that case: "There is no more fateful choice a man charged with a capital offense can make and it is the most elemental essence of human nature that he will choose a course to make death impossible regardless of other available alternatives which might or might not guarantee that result. And here the defendant knew the State would seek the supreme penalty. We think it most unreasonable to say that because he chose certain life, that decision was an involuntary one subject to later avoidance. If such were the law it would seem no non vult plea to a murder indictment could ever stand where there had been any possibility of a death sentence." (38 N.J. pp. 254–255, 183 A.2d p. 655).

The colloquy between the County Court and the petitioner upon the application for leave to retract and proffer a plea of non vult (supra) discloses that petitioner expressed full awareness that, by offering the plea of non vult he was admitting his guilt of having murdered the decedent; that such a plea exposed him to the possibility of a sentence of life imprisonment; that if he stood upon his plea of not guilty and went to trial and were found guilty of murder in the first degree without a recommendation, he would expose himself to the penalty of death. He repeatedly stated that all of the possibilities referred to had been discussed by him with his attorneys, and reiterated his controlling desire to avoid a trial. His plea of non vult, therefore, was not coerced.

Petitioner's fourth and fifth contentions are that the judge, who conducted the sanity hearing, acted in an arbitrary and partisan manner, prejudicial to petitioner, and abused his discretion, resulting in an accumulation of errors and denial of due process. For some specific examples, he claims that the judge made contradictory rulings, commented facetiously, refused to let the expert witnesses testify as to their conclusions on petitioner's competence, admitted evidence of petitioner's admission of having committed prior thefts, relied on petitioner's failure to testify as evidence of his competence and appointed two attorneys to represent him rather than just one. If these, and the other actions attacked by petitioner under his fourth and fifth contentions, were errors at all, they do not individually or cumulatively constitute a denial of a fair trial and of due process. United States ex rel. Birch v. Fay, supra, 190 F.Supp. 107.

Petitioner's sixth contention is that, as a result of the errors complained of in his first five contentions, his rights were so seriously violated that the trial court lost jurisdiction and his conviction was therefore void. This contention merely restates petitioner's conclusions in the other contentions that the sanity hearing, the acceptance of his plea and the sentence constituted violations of due process under the Fourteenth Amendment, and therefore adds nothing to the petition.

Petitioner also alleges that the evidence shows he was insane at the time

of the commission of the offense. His present assertion that he was legally insane at the time of the alleged crime, even if susceptible of present proof, does not impair the validity of the finding, upon substantial evidence, that petitioner was mentally competent to plead or in the alternative to stand trial under the indictment at the time of the hearing. Had petitioner preferred to stand upon his initial plea of not guilty and risk a trial of the indictment, he could have been found guilty of first degree murder, incurring the death penalty, or, with recommendation, life imprisonment; he could have asserted as a defense insanity at the time of the alleged offense, and if acquitted thereon, would have been committed to appropriate confinement in a mental institution if he continued to be insane. His plea of non vult was entirely consistent with a natural and considered desire to avoid the risk of execution. These alternative possibilities were fully explained to petitioner by the County Judge before accepting his plea of non vult, and his plea of non vult, which he was competent to make, precludes him from asserting his insanity at the time of the offense.

In conclusion, opportunity accorded to the petitioner by the Bergen County Court to obtain an adjudication as to his mental competency to stand trial by a plenary hearing, at which the testimony of witnesses in petitioner's own behalf as well as in behalf of the State was heard, with right and opportunity recognized and afforded to both parties to examine and cross-examine such witnesses, cannot by any stretch of the meaning of language be construed to constitute a denial of due process of law. While there were some conflicts between the opinions of the expert witnesses whose testimony was presented at the hearing on the issue of competency, there was on the face of the record presently before me substantial evidence supportive of the conclusion of the trial Judge that petitioner was competent to stand trial. The record which he submits upon his instant application fails to disclose any error, prejudice, coercion or collusion on the part of the hearing Judge. The proceedings to date are barren of any disclosure or even suggestion of a denial of due process of law to petitioner, other than petitioner's unfounded allegations. Because there was substantial evidence justifying the State Court in concluding that the petitioner was competent to stand trial, it necessarily follows that the same evidence disclosed with equal clarity the competency of the petitioner to plead non vult, even though such a plea was equivalent to one of guilty which admitted or confessed the offense charged in the indictment. Petitioner's plea of non vult was voluntary, uncoerced and understandingly proffered. The issue of the petitioner's competency to stand trial was fairly and completely resolved in a plenary hearing in the presence of petitioner, represented by competent counsel, and upon substantial evidence. The factual determination upon which the Court concluded that petitioner was competent to stand trial is fairly supported by the record as a whole. The procedure followed by the State Court afforded a full and fair hearing. Accordingly, I find no basis in the record or in the contentions of petitioner for questioning the propriety of his present confinement.

With the petition for habeas corpus, Urbano filed here additional petitions requesting orders releasing the following documents to him in connection with the present application: (1) the medical and psychiatric reports on petitioner prepared by the State Hospital; (2) all statements, documents, reports and all material evidence in his case now in the possession of the Bergen County Prosecutor's Office; (3) the pre-sentence report submitted to the sentencing judge; and (4) a copy of his medical records while he was in the Bergen County Jail and a statement from the Sheriff that he has submitted to petitioner all information possessed by the County Jail. In view of my conclusion that the petition for writ of habeas corpus should be denied, it becomes unnecessary for me to

consider petitioner's demand for the foregoing documentary material.

For the reasons aforesaid, the petition of Robert F. Urbano for a writ of habeas corpus filed in this Court on October 28, 1963, is denied and is accordingly dismissed this *13th* day of January, 1964.